UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Luis Regil Jesus, et al., *Plaintiffs*, | ) | Case No. 2:23-cv-00034-gwc |
| *v.* | ) | |
| Ur M. Jaddou, Director, U.S. Citizenship and Immigration Services *Defendant*. | ) | |

**CERTIFICATION OF DOCUMENTS**

I, Lynn A. Boudreau, make the following declaration in lieu of an affidavit as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed with the United States District Court for the District of Vermont, and that it is the legal equivalent of a statement under oath.

1. I am an Associate Portfolio Director for the Service Center Operations Directorate ("SCOPS") U.S. Citizenship and Immigration Services ("USCIS"), which is within the U.S. Department of Homeland Security ("DHS"). I have been employed by the legacy Immigration and Naturalization Service ("INS") and USCIS since 1991. In my current position, I manage the team adjudicating Petitions for U Nonimmigrant Status ("Form I-918").
2. This declaration is based upon my personal knowledge, upon information obtained from other individuals employed by USCIS in the course of my official duties, and upon information obtained from records maintained by USCIS.
3. SCOPS is responsible for processing and adjudicating every Form I-918, Petition for U Nonimmigrant Status ("U visa petition), and Form I-918 Supplement A, Petition for Qualifying Family Member of U-1 Recipient (U visa derivative petition), submitted to USCIS.
4. To the best of my knowledge, the documents in the accompanying administrative record are a true and correct copy of the documents located in the files of USCIS.
5. I certify, to the best of my knowledge, information, and belief, that the materials provided are a true, correct, and complete administrative record with respect to USCIS's policy, contained in the larger Bona Fide Determination Policy implemented in June 2021, to generally not conduct waiting list adjudications for domestic U visa petitioners and derivatives who have received favorable bona fide determinations, and employment authorization and deferred action based on the bona fide determinations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of April, 2025.

LYNN A BOUDREAU

Digitally signed by LYNN A BOUDREAU
Date: 2025.04.23 11:13:14 -04'00'

Lynn A. Boudreau
Associate Portfolio Director
Service Center Operations Directorate
U.S. Citizenship and Immigration Services
Department of Homeland Security

## U Nonimmigrant Bona Fide Determination Process (U BFD)[1]

CURRENT POLICY

USCIS has never implemented a U nonimmigrant Bona Fide Determination (U BFD) process as permitted by statute.[2] Rather, USCIS policy has been to conduct a full waitlist determination review as currently mandated by regulation.[3] This has been the policy throughout the history of the U program, with waitlist cases and the backlog becoming prevalent beginning in 2011-2012.

ISSUE

While conducting full waitlist petitions and not establishing a quicker initial U BFD review, the U nonimmigrant backlog stands at over 250,000 principal and derivative petitions, with petitioners waiting approximately 5 years for an initial decision. This is due to several factors, including:

- Tens of thousands of petitions received annually over the statutory cap[4] of 10,000 visas;
- Limited resources within USCIS;
- Complexity of the adjudication, which averages to 8 hours per completion.

CONCERNS AND NEGATIVE IMPACTS

Due to the backlog, processing time, and continued receipt of thousands of cases above the statutory cap, USCIS is subject to numerous lawsuits claiming undue delay in the adjudication of U petitions, including a large class action suit currently in negotiations. USCIS currently expedites most cases that are party to a pending lawsuit. As the number of lawsuits and expedited cases increase, other petitioners are encouraged to file their own lawsuits. This puts extreme pressure on our limited adjudicative resources and places these petitioners ahead of others who may have been in the backlog for a longer period or do not have the resources to obtain counsel. Therefore, both USCIS and petitioners are subject to continued negative impacts. The current model is simply unsustainable.

SUGGESTIONS

USCIS must establish an efficient U BFD process as an effective replacement to the current waitlist process in order to increase the number of petitions that can be reviewed and produce a response to petitioners in the backlog. This process must confirm the petitioner has demonstrated a bona fide claim to U nonimmigrant status while maintaining background and security reviews to maintain program integrity and promote public safety. Highlights of this process include:

- Review bona fide claim (properly filed I-918 petition and I-918B law enforcement certification);
- Background/security check, including TECS, Name/DOB and RAP/iDHS information.

POTENTIAL BENEFITS

The efficiency goal for the U BFD process would be a 60-minute maximum adjudication time as compared to the now average 8-hour waitlist adjudication. This will allow USCIS to issue initial

---

[1] The term "U BFD" may carry certain procedural or legal requirements, as "*bona fide*" may be considered a term of art and is used in other immigration programs. This process can be renamed to something other than *"bona fide"* if necessary.
[2] INA 214(p)(6).
[3] 8 CFR 214.14(d)(2).
[4] The number of visas issued under the U nonimmigrant program "shall not exceed 10,000". INA 214(p)(2).

decisions on thousands of additional cases, maintain program integrity, and reduce the number of petitioners awaiting initial review while also reducing and mooting undue delay lawsuits.

With current resources at approximately 100 – 120 officers[5], USCIS issues approximately 25,000 decisions per year in the U nonimmigrant program. Of these 25,000 decisions:

- 12,000 U waitlist approval decisions at 8 hours/decision for a total of 96,000 hours[6].
- 10,000 full U nonimmigrant status approvals at 3 hours/decision for a total of 30,000 hours[7].
- 3,000 denials or petitions administratively closed.

Using only approval decision hours, waitlist petitions and full nonimmigrant status approvals total approximately 126,000 hours. The adoption of a 60-minute BFD EAD review will exponentially increase the amount of initial decisions issued to petitioners while also continuing to issue the statutory maximum 10,000 U visas each fiscal year. The latter issue is extremely important, as USCIS would certainly be vulnerable to lawsuits and Congressional review if it did not issue its statutory allotment of U visas considering the size of the backlog and historical precedent of meeting the statutory cap since FY2010.

**Year 1**

When implemented, USCIS will be in an advantageous position to issue thousands of additional U BFD EAD petitions when compared to the current waitlist adjudication process while also issuing the statutory maximum of allotted visas. As noted above, there will be over 10,000 waitlist petitions available for full adjudication, accounting for 30,000 adjudication hours. With current resources, this leaves 96,000 adjudication hours available to conduct the proposed 60-minute U BFD EAD review.

Therefore, in theory, USCIS would have the ability to issue over 90,000 initial U BFD EAD reviews in Year 1. However, additional factors need to be considered before providing an estimate on how many initial U BFD EAD reviews should take place Year 1. These factors include, but are not limited to:

- Length of EAD issuance (1-year, 2-year) and necessary resources to adjudicate renewal I-765 applications.
- Available resources to the U program, including possible additions from outside the Humanitarian Divisions.

While these factors must be considered, it is clear a 60-minute review to replace the current 8-hour waitlist process will allow USCIS to issue thousands of additional initial reviews and the flexibility to shift available resources to assist in this endeavor.

**Year 2 and Beyond**

Beginning in Year 2, USCIS will have only a few thousand waitlist cases remaining from the previous fiscal years. Those cases will receive the full U nonimmigrant status review averaging at 3 hours/decision. To reach the statutory 10,000 cap, USCIS will conduct full U nonimmigrant status

---

[5] Resources assigned to the U nonimmigrant vary per agency priority and availability.
[6] The initial review of a U petition is a full adjudication, including a full review of eligibility requirements, inadmissibility issues, a discretionary analysis, and the issuance of any necessary RFEs. The queue for U waitlist review is determined by the receipt date of the U petition, minus expedited review cases at the request of ICE or of counsel to moot current lawsuits. If the petition could be approved for full U nonimmigrant status, it is placed on the waitlist and will receive full nonimmigrant status when a visa is available.
[7] U waitlist petitions are granted full U nonimmigrant status when visas are available. The queue for full U nonimmigrant status is determined by the date in which the petition was placed on the waitlist.

reviews of cases that received an initial U BFD EAD review regardless if that review was positive or negative. This will ensure USCIS maintains the "first-in, first-out" order of review it has employed throughout the history of the U program, providing fairness to all petitioners and maintaining priority based on the date of receipt of the U petition.

Year 2 reviews would appear as follows:

- Approximately 2,000 – 3,000 remaining waitlist petitions receiving full U nonimmigrant status review at 3 hours/decision totaling 9,000 hours.
- Approximately 7,000 – 8,000 BFD EAD reviewed petitions now receiving full U nonimmigrant status review at 7 hours/decision totaling 56,000 hours.

Again, only using current assigned resources and the 126,000 hours spent on U nonimmigrant and waitlist approvals, this leaves approximately 70,000 hours for additional reviews and adjudications. It must be noted, however, that these 70,000 hours will likely include U BFE EAD renewal I-765 applications depending on the validity dates of the EAD provided by USCIS and resource allocation. SCOPS HART, FPB and the Service Centers must remain flexible to maintain meeting the statutory 10,000 cap while continuing initial reviews and adjudicating the incoming U BFE EAD renewal I-765 applications.

Year 3 and beyond will only include full U nonimmigrant status reviews from petitions that have received their initial U BFD EAD review, initial U BFD EAD reviews and U BFD EAD I-765 renewal applications. The U waitlist will have been exhausted in Year 2.

PROPOSED PROCEDURE

The BFD EAD adjudication would be more efficient than the current process of conducting a full waitlist adjudication (full eligibility review, security/background, inadmissibility review, discretionary analysis, etc.). Generally, the BFD EAD process would include:

**Establishment of Eligibility Requirements:**

- Full biometrics and background checks completed.
- Eligibility Requirements: U BFD eligibility requirements will be met if:
  - I-918 is completed and signed.
  - I-918B Law Enforcement Certification is completed and signed. Summary review of I-918B and any attached documentation from law enforcement to confirm the following:
    - Qualifying criminal activity, crime occurring in the US, and helpfulness requirement met.[8] No RFE sent for BFD purposes if these are not met to allow for efficiency. Negative BFD notice will be issued and no EAD granted.
    - No additional criminal history or information attributed to the petitioner. If additional criminal information is present, it will be part of the discretionary analysis (below).

[8] USCIS will assume the "substantial physical or mental abuse" eligibility requirement is met with the proper filing of the I-918 and I-918B.

**Discretionary Analysis:**

- Security/public safety, criminal and/or inadmissibility issues adjudicated similar to the DACA model (felony, significant misdemeanor, 3 or more non-significant misdemeanors). If any of these elements are met, negative BFD EAD decision issued and no EAD granted.
  - Negative decision issued for evidence of arrests or convictions under proposed procedure, with no RFE issuance for arrest records or court dispositions for maximum efficiency.
  - Officers will review the RAP/iDHS record (if applicable), TECS record and I-918B certification for evidence of arrests or convictions, security, public safety and inadmissibility issues.
  - NOTE: U SGN implementation forthcoming[9], which will remove petitioners with serious criminal or security related issues from BFD EAD review.

**Additional Information**

- SCOPS estimates 75-85%[10] of U petitioners will qualify for an EAD under this proposal. While the vast majority (90-95%) of U petitioners have an inadmissibility issue, that majority is mainly EWI or overstay issues, without serious criminal or security concerns.

- The estimate of 75-85% approval rate for BFD EAD provides a defense from potential legal challenges stating the review is injurious to U petitioners or arbitrary and capricious. This approval range is also comparable to the overall approval rate per year when including nonimmigrant status approvals, waitlist approvals and denials (85-90%).

- This efficient and streamlined process will allow USCIS to train officers outside of the U program to conduct U BFD EAD adjudications, providing greater flexibility to the agency in assigning resources and increasing the number of adjudications that can be completed.

- A positive BFD EAD decision will provide an EAD to the petitioner but will not include U nonimmigrant status or guarantee an approval decision for U nonimmigrant status in the future.

- Stakeholders most likely will strongly argue a positive BFD EAD decision should include the EAD and deferred action to provide greater protection from removal. Waitlist petitions currently receive deferred action and an EAD based on the issuance of the deferred action. OCC also has stated this may be necessary to avoid litigation.

---

[9] Need updated confirmation from USCIS leadership.
[10] Estimates based on data provided in the April 2020 "Arrest Histories of U visa Petitioners" conducted by OP&S.

I-918, Petition for U Nonimmigrant Status
Pending Petitions by BFD Status
As of March 31, 2025

U.S. Citizenship and Immigration Services

| Form Number | BFD Status | Total Pending Count | % with First Touch | Count with only BFD Review | Count with both BFD Review and Waiting List | Count with only Waiting List Placement | Count without BFD Review or Waiting List |
|---|---|---|---|---|---|---|---|
| **TOTAL** | **TOTAL** | **412,808** | **75.2%** | **291,613** | **15,395** | **3,566** | **102,234** |
| TOTAL | BFD Granted | 241,372 | 100.0% | 240,068 | 1,304 | - | - |
| TOTAL | No BFD Granted, Waiting List Review | 65,636 | 100.0% | 51,545 | 14,091 | - | - |
| TOTAL | No BFD Review | 105,800 | 3.4% | - | - | 3,566 | 102,234 |
| **I-918** | **TOTAL** | **248,100** | **79.6%** | **186,057** | **9,985** | **1,405** | **50,653** |
| I-918 | BFD Granted | 163,639 | 100.0% | 162,780 | 859 | - | - |
| I-918 | No BFD Granted, Waiting List Review | 32,403 | 100.0% | 23,277 | 9,126 | - | - |
| I-918 | No BFD Review | 52,058 | 2.7% | - | - | 1,405 | 50,653 |
| **I-918A** | **TOTAL** | **164,708** | **68.7%** | **105,556** | **5,410** | **2,161** | **51,581** |
| I-918A | BFD Granted | 77,733 | 100.0% | 77,288 | 445 | - | - |
| I-918A | No BFD Granted, Waiting List Review | 33,233 | 100.0% | 28,268 | 4,965 | - | - |
| I-918A | No BFD Review | 53,742 | 4.0% | - | - | 2,161 | 51,581 |

**Table Key:**

– Represents zero or rounds to 0.0.

**Note(s):**

1) This report reflects the most up to date data available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality

CLAIMS3, ELIS, NPD, queried 3/2025, PAER0017257.

Forms Pending at SCOPS
By Fiscal Year
As of September 30, 2020 and September 30, 2021

U.S. Citizenship and Immigration Services

| Fiscal Year and Form | FY 2020 | FY 2021 |
|---|---|---|
| EOIR29 | 4,140 | 6,565 |
| I102 | 2,319 | 3,497 |
| I129 | 106,724 | 80,314 |
| I129F | 21,221 | 29,489 |
| I129S | 98 | 217 |
| I130 | 1,206,277 | 1,260,004 |
| I131 | 60,606 | 230,429 |
| I140 | 53,328 | 88,880 |
| I191 | 12 | 8 |
| I192 | 202,576 | 214,483 |
| I193 | 490 | 430 |
| I212 | 1,877 | 2,638 |
| I290A | 4 | 2 |
| I290B | 5,868 | 7,105 |
| I360 | 32,204 | 50,199 |
| I485 | 173,881 | 291,429 |
| I485J | 2,172 | 7,489 |
| I526 | 7 | 23 |
| I539 | 946 | 327 |
| I539AN | 98,460 | 67,472 |
| I539N | 348,386 | 310,217 |
| I551 | 3 | 3 |
| I589 | 8 | 6 |
| I601 | 6,998 | 7,639 |
| I601A | 66,241 | 91,487 |
| I612 | 935 | 1,007 |
| I687 | 3 | 2 |
| I690 | 11 | 9 |
| I694 | 3 | 2 |
| I698 | 2 | - |
| I730 | 23,584 | 14,878 |
| I751 | 128,963 | 140,817 |
| I751A | 46,581 | 57,980 |
| I765 | 452,382 | 999,673 |
| I817 | 392 | 145 |
| I821 | 1,994 | 280,311 |
| I821D | 53,299 | 132,400 |
| I824 | 3,768 | 7,242 |

| | | |
|---|---|---|
| I829 | 2,522 | 61 |
| I829C | 4,734 | 4,711 |
| I829S | 2,625 | 2,557 |
| I90 | 332,517 | 600,710 |
| I914 | 1,773 | 2,202 |
| I914A | 1,420 | 1,696 |
| I918 | 160,625 | 169,368 |
| I918A | 107,671 | 113,460 |
| I929 | 1,138 | 1,432 |
| I941 | 2 | 5 |
| N565 | 13,405 | 25,774 |
| UNK | 228 | 122 |

**Note(s):**

1) This report reflects the most up to date data available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) SCOPS forms are where the reporting office is 'CSC','VSC','YSC','TSC','NSC','WAC','SSC','LIN','EAC','ESC','SRC',or 'ESC'.

4) For a complete list of USCIS forms and descriptions, visit: **https://www.uscis.gov/forms**

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
NPD, queried 03/2025, PAER0017412.

I-918, Petition for U Nonimmigrant Status
Pending Petitions by BFD Status
As of June 30, 2021

U.S. Citizenship and Immigration Services

| Form Number | BFD Status | Total Pending Count | % with First Touch | Count with only BFD Review | Count with both BFD Review and Waiting List Placement | Count with only Waiting List Placement | Count without BFD Review or Waiting List Placement |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| **TOTAL** | **TOTAL** | **275,825** | **8.0%** | **214** | **7** | **21,730** | **253,874** |
| TOTAL | BFD Granted | 168 | 100.0% | 162 | 6 | - | - |
| TOTAL | No BFD Granted, Waiting List Review | 53 | 100.0% | 52 | 1 | - | - |
| TOTAL | No BFD Review | 275,604 | 7.9% | - | - | 21,730 | 253,874 |
| | | | | | | | |
| **I-918** | **TOTAL** | **165,050** | **8.2%** | **150** | **7** | **13,375** | **151,518** |
| I-918 | BFD Granted | 126 | 100.0% | 120 | 6 | - | - |
| I-918 | No BFD Granted, Waiting List Review | 31 | 100.0% | 30 | 1 | - | - |
| I-918 | No BFD Review | 164,893 | 8.1% | - | - | 13,375 | 151,518 |
| **I-918A** | **TOTAL** | **110,775** | **7.6%** | **64** | **-** | **8,355** | **102,356** |
| I-918A | BFD Granted | 42 | 100.0% | 42 | - | - | - |
| I-918A | No BFD Granted, Waiting List Review | 22 | 100.0% | 22 | - | - | - |
| I-918A | No BFD Review | 110,711 | 7.5% | - | - | 8,355 | 102,356 |

**Table Key:**

– Represents zero or rounds to 0.0.

**Note(s):**

1) This report reflects the most up to date data available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
CLAIMS3, NPD, queried 03/2025, PAER0017412.

Para tener acceso a este sitio en Español, presione aquí (./historic-pt-es)

# Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year

## Fiscal Year 2020 to 2025 (up to January 31, 2025)

Next Page (./historic-pt-2)

## Median Processing Times (in Months)

The number of months shown is the median. It represents the time it took to complete half of the cases in a given time period.

| Form | Form Description | Classification or Basis for Filing | FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 | FY 2025[7] |
|---|---|---|---|---|---|---|---|---|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance, replacement or renewal | 8.3 | 5.2 | 1.2 | 9.1 | 1.1 | 0.7 |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | 3.9 | 4.0 | 7.8 | 5.2 | 3.6 | 2.2 |
| I-129 | Petition for a Nonimmigrant Worker | Nonimmigrant Petition (Premium filed) | 0.4 | 0.3 | 0.3 | 0.2 | 0.3 | 0.4 |
| I-129 | Petition for a Nonimmigrant Worker | Nonimmigrant Petition (non Premium filed) | 2.3 | 1.8 | 2.3 | 2.5 | 2.2 | 3.5 |
| I-129F | Petition for Alien Fiancé(e) | All Classifications | 4.6 | 8.0 | 12.1 | 13.9 | 8.5 | 6.0 |
| I-130 | Petition for Alien Relative | Adoptions | 22.3 | 27.7 | 35.4 | 49.2 | 37.3 | 45.1 |
| I-130 | Petition for Alien Relative | Immediate Relative | 8.3 | 10.2 | 10.3 | 11.8 | 11.7 | 14.4 |
| I-131 | Application for Travel Document | Advance Parole Document | 4.6 | 7.7 | 7.3 | 5.8 | 5.9 | 6.7 |
| I-131 | Application for Travel Document | Parole in Place | 4.8 | 4.9 | 4.7 | 5.4 | 4.1 | 4.1 |
| I-131[1] | Application for Travel Document | Travel Document | 4.0 | 7.2 | 10.6 | 15.9 | 14.3 | 13.7 |

| Form | Form Description | Classification or Basis for Filing | FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 | FY 2025[7] |
|---|---|---|---|---|---|---|---|---|
| I-140 | Immigrant Petition for Alien Workers | Immigrant Petition (Premium filed) | 0.3 | 0.4 | 0.3 | 0.3 | 0.3 | 0.7 |
| I-140 | Immigrant Petition for Alien Workers | Immigrant Petition (non Premium filed) | 4.9 | 8.2 | 9.3 | 4.3 | 7.1 | 7.6 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | Immigrant Petition (All Classifications) | 11.4 | 5.5 | 8.4 | 6.8 | 3.1 | 3.5 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on grant of asylum more than 1 year ago | 6.9 | 12.9 | 22.6 | 22.9 | 13.4 | 10.2 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on refugee admission more than 1 year ago | 9.3 | 7.1 | 14.1 | 21.6 | 13.2 | 7.9 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | 8.8 | 9.9 | 11.0 | 8.6 | 6.6 | 6.9 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Family-based adjustment applications | 9.3 | 12.9 | 10.6 | 11.4 | 8.9 | 9.3 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on Cuban Adjustment Act of 1966 (CAA) | 7.1 | 8.5 | 5.5 | 3.3 | 4.6 | 7.3 |
| I-485[2] | Application to Register Permanent Residence or to Adjust Status | All Other Adjustment of Status | 32.7 | 8.7 | 5.4 | 7.0 | 9.7 | 11.0 |
| I-526 | Immigrant Petition By Alien Entrepreneur | For use by an investor who wishes to immigrate to the United States | 31.1 | 32.5 | 44.2 | 50.0 | 53.8 | 70.9 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All Extend/Change Applications | 4.8 | 9.6 | 6.8 | 5.8 | 2.7 | 2.5 |
| I-600 | Petition to Classify Orphan as an Immediate Relative | U.S. citizen filing to adopt an orphan | 3.2 | 5.3 | 6.3 | 5.8 | 7.4 | 10.6 |
| I-600A | Application for Advance Processing of Orphan Petition | U.S. citizen who plans to adopt a foreign-born child | 2.8 | 3.5 | 3.0 | 3.0 | 3.2 | 3.2 |

| Form | Form Description | Classification or Basis for Filing | FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 | FY 2025[7] |
|---|---|---|---|---|---|---|---|---|
| **I-601A** | Application for Provisional Unlawful Presence Waiver | Provisional Waiver of INA 212(a)(9)(B) | 11.2 | 17.1 | 31.7 | 43.0 | 41.2 | 32.1 |
| **I-730[3]** | Asylee Relative Petition | Petition for accompanying family members of an asylee | 15.3 | 18.9 | 27.3 | 8.9 | 7.3 | 9.9 |
| **I-751** | Petition to Remove the Conditions on Residence | Removal of conditions on lawful permanent resident status (spouses and children of U.S. citizens and lawful permanent residents) | 13.8 | 13.6 | 18.2 | 20.8 | 23.5 | 21.8 |
| **I-765** | Application for Employment Authorization | All other applications for employment authorization | 2.4 | 3.0 | 4.7 | 3.2 | 3.1 | 1.9 |
| **I-765** | Application for Employment Authorization | Based on an approved, concurrently filed, I-821D, Consideration of Deferred Action for Childhood Arrivals (c)(33). | 1.1 | 1.9 | 0.5 | 1.0 | 1.8 | 0.4 |
| **I-765** | Application for Employment Authorization | Based on a pending asylum application | 2.5 | 3.2 | 9.2 | 1.6 | 0.5 | 0.5 |
| **I-765** | Application for Employment Authorization | Based on a pending I-485 adjustment application | 4.8 | 7.1 | 6.7 | 5.5 | 3.7 | 2.1 |
| **I-765** | Application for Employment Authorization | Based on parole | 4.7 | 0.6 | 1.1 | 1.3 | 0.8 | 0.8 |
| **I-800** | Petition to Classify Convention Adoptee as an Immediate Relative | Petition to classify Convention Adoptee as an Immediate Relative | 0.7 | 0.9 | 0.9 | 1.0 | 1.2 | 1.2 |

| Form | Form Description | Classification or Basis for Filing | FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 | FY 2025[7] |
|---|---|---|---|---|---|---|---|---|
| **I-800A** | Application for Determination of Suitability to Adopt a Child from a Convention Country | Application for Determination of Suitability to Adopt a Child from a Convention Country | 1.9 | 2.5 | 2.3 | 2.1 | 2.8 | 2.8 |
| **I-817** | Application for Family Unity Benefits | Voluntary departure under the family unity program and LIFE Act family unity | 5.3 | 5.9 | 7.1 | 8.5 | 6.9 | 3.9 |
| **I-821** | Application for Temporary Protected Status | To request or reregister for TPS | 2.2 | 4.1 | 10.2 | 11.8 | 5.9 | 5.5 |
| **I-821D** | Consideration of Deferred Action for Childhood Arrivals | Request for Initial Deferred Action | 5.5 | 5.9 | N/A | N/A | N/A | N/A |
| **I-821D** | Consideration of Deferred Action for Childhood Arrivals | Request for Renewal of Deferred Action | 1.1 | 1.8 | 0.5 | 1.0 | 1.8 | 0.4 |
| **I-824** | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | 6.0 | 4.4 | 6.0 | 3.6 | 7.9 | 6.0 |
| **I-829** | Petition by Investor to Remove Conditions on Permanent Resident Status | Removal of conditions on lawful permanent resident status (immigrant investors) | 24.8 | 34.5 | 45.5 | 49.4 | 41.0 | 17.1 |
| **I-914[4]** | Application for T Non-immigrant Status | Provide temporary immigration benefits to an alien who is a victim of trafficking in persons, and immediate family | 18.6 | 18.0 | 12.9 | 12.3 | 14.9 | 17.5 |
| **I-918[5]** | Petition for U Non-immigrant Status | Provide temporary immigration benefits to an alien who is a victim of qualifying criminal activity, and their qualifying family | 54.3 | 53.6 | 59.0 | 57.5 | 46.1 | 32.1 |

| Form | Form Description | Classification or Basis for Filing | FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 | FY 2025[7] |
|---|---|---|---|---|---|---|---|---|
| **I-924** | Application For Regional Center Designation Under the Immigrant Investor Program | I-924 - Application For Regional Center Designation Under the Immigrant Investor Program | 19.1 | 22.1 | N/A | N/A | N/A | N/A |
| **I956** | Application for Regional Center Designation | I-956 - Application for Regional Center Designation | N/A | N/A | N/A | 9.4 | 10.4 | 8.8 |
| **I956F** | Application for Approval of an Investment in a Commercial Enterprise | I-956F - Application for Approval of an Investment in a Commercial Enterprise | N/A | N/A | N/A | 11.7 | 10.2 | 8.5 |
| **N-400** | Application for Naturalization | All Other Application for Naturalization | 8.9 | 11.5 | 10.5 | 6.0 | 5.0 | 5.5 |
| **N-400** | Application for Naturalization | Military Application for Naturalization | 7.1 | 7.0 | 5.6 | 4.9 | 3.0 | 2.2 |
| **N-565** | Application for Replacement Naturalization/Citizenship Document | U.S. citizen applying for a replacement of naturalization or citizenship certificate | 3.6 | 6.7 | 10.8 | 8.1 | 5.6 | 5.4 |
| **N-600** | Application for Certificate of Citizenship | Application for recognition of U.S. citizenship | 5.1 | 5.8 | 6.3 | 6.9 | 4.3 | 3.7 |
| **N-600K** | Application for Certificate of Citizenship and Issuance of Certificate Under Section 322 | Application for Citizenship and Issuance of Certificate | 5.7 | 9.6 | 6.1 | 7.0 | 6.2 | 6.3 |
| **Waivers[6]** | Waivers | Excluding I-601A | 7.3 | 7.6 | 8.0 | 11.6 | 16.0 | 16.9 |

**Next Page (./historic-pt-2)**

__Table Key:__

N/A Not available.

__References:__

[1] The processing time listed for form I-131, Application for Travel Document, reflects travel document requests associated with most form types across agency components; however, it does not reflect

the processing time for specific types of travel document requests such as humanitarian parole.

[2] Excludes EOIR Adjustment applications.

[3] Excludes petitions for accompanying family members of a refugee.

[4] Includes I-914A, Application for Family Member of T-1 Recipient.

[5] Includes I-918A, Petition for Qualifying Family Member of U-1 Recipient.

[6] Includes the following applications filed to waive exclusionary grounds: Forms I-191, I-192, I-212, I-601, I-602, and I-612.

[7] FY2025 uses data from October 1, 2024 to January 31, 2025.

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.
2) Processing times may differ from previously published reports due to system updates and post-adjudicative outcomes.
3) Discrepancies from past historical processing time reports may exist due to differences in reporting procedures.
4) Some of the forms have been aggregated.
5) Processing times are defined as the number of months it took for an application, petition, or request to be processed from receipt to completion in a given time period. Visa regressed I-485s and revoked petitions or applications are excluded. Additional information on visa retrogression can be found on our website (https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression) (https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression).
6) Historical processing times are not comparable to the processing times posted on the USCIS processing times webpage (https://egov.uscis.gov/processing-times/) for certain form types due to different methodologies (for example, cycle time methodology versus processing time methodology). For more information, visit the Case Processing Times webpage (https://egov.uscis.gov/processing-times/more-info).
7) From FY2017 through FY2021, the processing time for the I-918/I-918A is calculated using the receipt date to waitlist determination date. Beginning in FY 2022, the processing time is calculated using the receipt date to Bona Fide Determination (BFD) review.
8) Consistent with the July 16, 2021 order (https://www.uscis.gov/DACADecisionStateofTexas) from the Southern District of Texas that prohibits DHS from granting initial DACA requests, USCIS has suspended calculations of processing times for initial DACA requests. The 5.9 months historical processing time listed for initial DACA requests was current as of June 30, 2021.
9) Statutory authorization related to the EB-5 Immigrant Investor Regional Center Program expired at midnight on June 30, 2021. For information regarding Form I-526 petition processing, and the impact of the lapse in statutory authorization related to the EB-5 Immigrant Investor Regional Center Program, please see: https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program (https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program).
10) The federal fiscal year is from October 1st through September 30th.

11) Beginning in FY2024 the following I-765 classifications: based on a pending I-485 adjustment application, based on parole, and based on asylum applications were retroactively added for FY 2013 through FY 2023.
12) Beginning in FY2025 the following N-400 classifications: military application for naturalization and all other application for naturalization were retroactively added for FY 2014 through FY 2025.
13) Beginning in FY2025 I-956 and I-956F processing times were retroactively added for FY 2020 through FY 2025.

Source(s):

1) Department of Homeland Security, U.S. Citizenship and Immigration Services, USCIS Electronic Immigration System (ELIS), C3 Consolidated, C4 Consolidated, INFACT, queried February 2025.

## Other case processing times resources

Reducing Processing Backlogs (./reducing-processing-backlogs)

Frequently Asked Questions About Processing Times (./processing-times-faqs)

When to expect to receive your Green Card (./expect-green-card)

Check current processing times (./home)

Processing information for the I-765 (./i765)

Affirmative Asylum Interview Scheduling (http://www.uscis.gov/humanitarian/refugees-asylum/asylum/affirmative-asylum-scheduling-bulletin)

Administrative Appeals Office (https://www.uscis.gov/about-us/directorates-and-program-offices/administrative-appeals-office-aao/aao-processing-times)

Parole Processing (https://www.uscis.gov/humanitarian/humanitarian-parole/parole-processing)

## Case management tools

Inquire about a case outside normal processing time (https://egov.uscis.gov/e-request/onpt)

Check your case status (https://egov.uscis.gov/casestatus/landing.do)

Update your mailing address (https://egov.uscis.gov/coa/)

Ask about missing mail (https://egov.uscis.gov/e-request/)

Correct a typographical error (https://egov.uscis.gov/e-request/typo)

Request appointment accommodations (https://egov.uscis.gov/e-request/accom)

**Feedback**

**Let us know what you think about our redesigned Processing Times webpage at ProcessingTimesFeedback@uscis.dhs.gov (mailto:ProcessingTimesFeedback@uscis.dhs.gov) (Please do not submit case-specific inquiries).**

Return to top

**Topics (https://www.uscis.gov/topics)**

**Forms (https://www.uscis.gov/forms)**

**Newsroom (https://www.uscis.gov/newsr**

**Citizenship (https://www.uscis.gov/citizenship)**

**Green Card (https://www.uscis.gov/green-card)**

**Laws (https://www.uscis.gov/laws-and-policy)**

**Tools (https://www.uscis.gov/tools)**

(https://

**Contact USCIS (https://www.uscis.gov/about-us/contact-us)**

(https://www.dhs.gov)

USCIS.gov

**An official website of the U.S. Department of Homeland Security (https://www.dhs.gov)**

National Terrorism Advisory System

About USCIS (https://www.uscis.gov/about-us)

Accessibility (https://www.uscis.gov/website-policies/accessibility)

Budget and Performance (https://www.uscis.gov/about-us/budget-planning-and-performance)

DHS Components (https://www.uscis.gov/website-policies/dhs-component-websites)

Freedom of Information Act (https://www.uscis.gov/records/request-records-through-the-freedom-of-information-act-or-privacy-act)

No FEAR Act Data (https://www.uscis.gov/about-us/equal-employment-opportunity/equal-employment-opportunity-data-posted-pursuant-to-the-no-fear-act)

Privacy and Legal Disclaimers (https://www.uscis.gov/website-policies/privacy-and-legal-disclaimers)

Site Map (https://www.uscis.gov/sitemap)

Office of
(https://w

The Whit
(https://w

USA.gov

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

U.S. Citizenship and Immigration Services

June 14, 2021 PA-2021-13

# Policy Alert

SUBJECT: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners

## Purpose

U.S. Citizenship and Immigration Services (USCIS) is publishing guidance in the USCIS Policy Manual[1] on employment authorization and deferred action for principal petitioners for U nonimmigrant status and qualifying family members with pending, bona fide petitions.[2]

## Background

U nonimmigrant status is available to noncitizens who have been victims of certain crimes, including domestic violence and sexual assault, and who are or have been helpful to law enforcement in the prosecution or investigation of those crimes.[3] A noncitizen granted U-1 nonimmigrant status as a principal petitioner is authorized to work based on that status. USCIS automatically issues an Employment Authorization Document (EAD) to principal petitioners upon the approval of the Petition for U Nonimmigrant Status (Form I-918).[4]

If the number of approvable petitions exceeds the annual visa cap allocation, USCIS places the approvable petitions on a waiting list. USCIS grants deferred action or, in limited circumstances, parole to U-1 principal petitioners and qualifying family members on the waiting list. USCIS may, as a matter of discretion, also authorize employment for such petitioners and qualifying family members.[5] USCIS generally provides such employment authorization under 8 CFR 274a.12(c)(14); USCIS may also provide employment authorization under INA 214(p)(6), but has not done so historically.[6]

[1] USCIS will expand and revise this content at a later date to fully detail the eligibility requirements petitioners must establish to obtain U nonimmigrant status. USCIS will also publish additional Policy Manual content to address documentation and evidence requirements and post-adjudicative matters.
[2] See INA 214(p)(6). USCIS provides guidance on what is a bona fide petition as part of this Policy Manual update; the statute does not define this term so USCIS provides its interpretation.
[3] Petitioners must possess credible and reliable information about the qualifying crime; and have been, are being, or are likely to be helpful to law enforcement in the detection, investigation, or prosecution of the qualifying criminal activity. Petitioners must also establish that they suffered substantial physical or mental abuse as a result of the qualifying crime, and that they are admissible or merit a discretionary waiver of any applicable grounds of inadmissibility.
[4] See 8 CFR 214.14(c)(7).
[5] See 8 CFR 214.14(d)(2).
[6] On December 23, 2008, the William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008) amended the Immigration and Nationality Act (INA) to provide DHS with discretion to grant employment authorization

Due to drastic increases in the volume of U nonimmigrant petitions and a growing backlog awaiting placement on the waiting list or final adjudication, USCIS has decided to exercise its discretion under INA 214(p)(6) to conduct bona fide determinations (BFD) and provide EADs and deferred action to noncitizens with pending, bona fide petitions who meet certain discretionary standards.[7]
This guidance, contained in Volume 3 of the Policy Manual, updates and replaces Chapter 39.1(d)(2) and (f) of the Adjudicator's Field Manual (AFM), as well as the AFM's related appendices, and related policy memoranda. USCIS is implementing this guidance immediately and the guidance applies to all Form I-918 petitions that are currently pending, or filed on or after June 14, 2021.[8] The guidance contained in the Policy Manual is controlling and supersedes any related prior guidance.

**Policy Highlights**

- Provides that USCIS conducts an initial review of Form I-918 and will issue BFD EADs and deferred action for 4 years to petitioners for U nonimmigrant status and qualifying family members if USCIS deems their petition "bona fide", instead of completing a full waiting list adjudication.

- Clarifies that, if USCIS determines the principal petition is bona fide, USCIS will then determine whether the principal petitioner poses a risk to national security[9] or public safety, and finally, whether the principal petitioner warrants a favorable exercise of discretion to receive employment authorization under INA 214(p)(6) and deferred action.

- Explains that those who do not receive a BFD EAD under this initial review will proceed to the full waiting list adjudication and, if their petitions are approvable, will be placed on the waiting list for a U visa. Principal petitioners placed on the waiting list, and their qualifying family members, receive deferred action; if they have properly filed for employment authorization, they also receive an EAD valid for 4 years.

- Provides that USCIS will generally not conduct waiting list adjudications for noncitizens who have been granted BFD EADs and deferred action. Instead, their next adjudicative step will be final adjudication for U nonimmigrant status when space is available under the statutory cap.

---

to a noncitizen who has a pending, bona fide petition for U nonimmigrant status. See Section 201(c) of Pub. L. 110-457, 122 Stat. 5044, 5053 (December 23, 2008) (amending INA 214(p)(6)). Though permitted by statute, DHS has not previously implemented a process for providing such employment authorization, separate from the existing regulatory waiting list. (The existing regulatory structure, which predates the TVPRA 2008 authority, does not provide a mechanism for noncitizens with pending petitions to apply for employment authorization prior to waiting list placement.)

[7] INA 214(p)(6) permits, but does not require, the agency to create a separate employment authorization process. USCIS conducted an analysis under the Administrative Procedure Act regarding its implementation of INA 214(p)(6), interpretation of 8 CFR 214.14(d)(2), criminal history checks, and potential reliance interests associated with this Policy Manual update. For this analysis, see Appendix: Bona Fide Determination Process and Administrative Procedures Act Considerations.

[8] USCIS also plans to amend the Application for Employment Authorization (Form I-765) at a later date to include a specific reference to this EAD category.

[9] See INA 212(a)(3).

- Explains that throughout the initial 4-year validity period for the BFD EAD and grant of deferred action until final adjudication for U nonimmigrant status, USCIS will update and review background checks at regular intervals to determine whether a principal petitioner or a qualifying family member may maintain his or her BFD EAD and deferred action. USCIS also retains discretion to update background and security checks at any time when case-specific circumstances warrant.

- Clarifies that USCIS will review all petitions, both petitioners placed on the waiting list and petitioners issued BFD EADs, in receipt date order for final adjudication of U nonimmigrant status.

- Clarifies that USCIS is adopting the decision issued by the Ninth Circuit in *Medina Tovar v. Zuchowski* for nationwide application.[10] Therefore, when confirming a relationship between the principal petitioner and the qualifying family member which is based on marriage, USCIS will evaluate whether the relationship existed at the time the principal petition was favorably adjudicated, rather than when the principal petition was filed.

**Citation**

Volume 3: Humanitarian Protection and Parole, Part C, Victims of Crimes [3 USCIS-PM C].

[10] See *Medina Tovar v. Zuchowski*, 982 F.3d 631 (9th Cir. 2020) (en banc) (holding invalid the regulatory requirement that a spousal relationship exist at the time the Form I-918 is filed in order for the spouse to be eligible for classification as a U-2 nonimmigrant).

U.S. Citizenship and Immigration Services

MENU

USCIS Only Internal Version

Home > Policy Manual > Volume 3 - Humanitarian Protection and Parole > Part C - Victims of Crimes > Chapter 4 - Adjudication

# Chapter 4 - Adjudication

**Guidance**

Resources (24)

Appendices (2)

Updates (2)

History (0)

---

The U nonimmigrant status program now involves three distinct adjudicative processes:

- Bona Fide Determination (BFD) process for principal petitioners and qualifying family members with pending, bona fide U nonimmigrant petitions, who USCIS determines merit a favorable exercise of discretion;[1]
- Waiting list adjudication for petitions USCIS determines are eligible for U nonimmigrant status but cannot be approved due to the annual statutory cap; and
- Final adjudication of eligible petitions for U nonimmigrant status, where the approval of a principal petition results in the issuance of a visa drawn from the statutory cap of 10,000 visas allotted per fiscal year.

**Overview of U Nonimmigrant Adjudication Processes**

| Adjudication | USCIS Process | Benefits |
|---|---|---|

Need Help? Chat with Emma™

| Adjudication | USCIS Process | Benefits |
|---|---|---|
| BFD<br><br>(Interim Benefit) | • Does not make a final determination of eligibility.<br>• Determines whether a pending petition is bona fide by meeting initial filing requirements and whether background checks are completed.<br>• Determines whether background checks indicate a risk to national security or public safety, and otherwise merits a favorable exercise of discretion.<br>• Initiates waiting list adjudication for principal petitioners who do not receive a Bona Fide Determination Employment Authorization Document (BFD EAD).<br>• Places BFD EAD recipients in line with U waiting list petitioners for U nonimmigrant status adjudication in receipt date order | • Principal petitioners and qualifying family members living in the United States receive a BFD EAD and deferred action valid for 4 years. |
| Waiting List<br><br>(Interim Benefit) | • Determines eligibility for U nonimmigrant status at the time of adjudication.<br>• Places eligible petitioners not granted U nonimmigrant status "due solely to the (statutory) cap" on the waiting list.[2]<br>• Denies ineligible petitioners.<br>• Places U waiting list petitioners in line with BFD EAD recipients for U nonimmigrant status adjudication in receipt date order. | • Principal petitioners and qualifying family members living in the United States are eligible for employment authorization and deferred action for 4 years.<br>• USCIS may grant principal petitioners and qualifying family members living outside of the United States parole in limited circumstances. |

| Adjudication | USCIS Process | Benefits |
|---|---|---|
| Final Adjudication<br><br>(Full Benefit) | • Makes a final determination of eligibility for U nonimmigrant status.<br>• Grants U nonimmigrant status to eligible petitioners.<br>• Denies ineligible petitioners. | • Principal petitioners and qualifying family members in the United States receive U nonimmigrant status and employment authorization for up to 4 years. |

# Footnotes

[^ 1] See Appendix: Bona Fide Determination Process Flowchart [3 USCIS-PM C.4, Appendices Tab].

[^ 2] See 8 CFR 214.14(d)(2).

Current as of January 15, 2025

U.S. Citizenship and Immigration Services

MENU

Home > Policy Manual > Volume 3 - Humanitarian Protection and Parole > Part C - Victims of Crimes > Chapter 5 - Bona Fide Determination Process

# Chapter 5 - Bona Fide Determination Process

**Guidance**

Resources (21)

Appendices (2)

Updates (3)

History (1)

---

By statute, USCIS has discretion to provide employment authorization to noncitizens with pending, bona fide U nonimmigrant status petitions.[1] Consequently, USCIS implemented the Bona Fide Determination (BFD) process.

During the BFD process, USCIS first determines whether a pending petition is bona fide. Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion. If USCIS grants a noncitizen a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that noncitizen deferred action for the period of the BFD EAD. USCIS generally does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to; these petitioners' next adjudicative step is final adjudication when space is available under the statutory cap.[2]

As a matter of policy, USCIS interprets "bona fide" as part of its administrative authority to implement the statute as outlined below. Bona fide generally means "made in good faith; without fraud or deceit."[3] Accordingly, when interpreting the statutory term within the context of U nonimmigrant status, USCIS determines whether a petition is bona fide based on the petitioner's compliance with initial evidence requirements and successful completion of background checks. If USCIS determines a petition is bona fide, USCIS then considers any national security and public safety risks, as well as any other relevant considerations, as part of the discretionary adjudication.[4]

As a primary goal, USCIS seeks to adequately evaluate and adjudicate petitions as efficiently as possible. The BFD process provides an opportunity for certain petitioners to receive BFD EADs and deferred action while their petitions are pending, consistent with the William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008).[5]

Only petitioners living in the United States may receive BFD EADs, since those outside the United States cannot as a practical matter work in the United States.[6] Likewise, deferred action

Need Help? Chat with Emma™

petitioners in the United States since those outside the United States have no potential removal to be deferred.

# A. Bona Fide Determination

## 1. Principal Petitioners

USCIS determines a principal petition is bona fide if:

- The principal petitioner has properly filed a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence,[7] except for the Application for Advance Permission to Enter as a Nonimmigrant (Form I-192).[8] Required initial evidence includes:
  - A complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and
  - A personal statement from the petitioner describing the facts of the victimization; and
- USCIS has received the result of the principal petitioner's background and security checks based upon biometrics.[9]

## 2. Qualifying Family Members

A qualifying family member is not guaranteed a BFD EAD solely because the principal petitioner receives a BFD.[10] The record must independently demonstrate the Form I-918, Supplement A is bona fide. USCIS determines a qualifying family member's petition is bona fide when:

- The principal petitioner receives a BFD;
- The petitioner has properly filed a complete Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A);
- The petition includes credible evidence of the qualifying family relationship;[11] and
- USCIS has received the results of the qualifying family member's background and security checks based upon biometrics.[12]

# B. Exercise of Discretion, Including Risk to National Security or Public Safety and Other Factors

Once USCIS has determined a petition is bona fide, USCIS determines whether the petitioner poses a risk to national security[13] or public safety by reviewing the results of background checks, and considers other relevant discretionary factors.[14] USCIS then determines whether to exercise its discretion to issue a BFD EAD and grant deferred action to a petitioner.

Section 214(p)(6) of the Immigration and Nationality Act (INA) gives the Secretary of Homeland Security, and USCIS as his or her designee, discretionary authority over the issuance of employment authorization to noncitizens with pending, bona fide U nonimmigrant status petitions.[15] A principal petitioner or qualifying family member who poses a risk to national security or public safety, or has other adverse discretionary factors, may not merit the favorable exercise of discretion necessary to grant deferred action.

Moreover, at the final adjudication, such individuals may require a waiver for any grounds of inadmissibility, and may be ineligible for U nonimmigrant status if they do not merit a favorable exercise of discretion. Therefore, in exercising the discretion granted by the INA, USCIS grants BFD EADs to principal petitioners and qualifying family members with pending bona fide petitions who it determines merit a favorable exercise of discretion, considering any risk to national security or public safety, as well as other relevant discretionary factors.

USCIS may choose not to exercise its discretion to grant a BFD EAD and deferred action where a petitioner appears to pose a risk to national security or public safety. For example, where a principal petitioner or qualifying family member has been convicted of or arrested for any of the following acts, USCIS generally does not issue a BFD EAD and deferred action and instead proceeds to a full adjudication to assess eligibility for waiting list placement. The following categories generally overlap with inadmissibility grounds[16] and may include:

- National security concerns;[17] and
- Public safety concerns, which include but are not limited to:
  - Murder, rape, or sexual abuse;
  - Offenses involving firearms, explosive materials, or destructive devices;[18]
  - Offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons;[19]
  - Aggravated assault;
  - An offense relating to child pornography; and
  - Manufacturing, distributing, or selling of drugs or narcotics.[20]

Violent and dangerous crimes, such as those listed above, embody the very activities law enforcement seeks to deter and prevent through cooperation facilitated by the U nonimmigrant status program.

Additionally, USCIS may determine on a case-by-case basis that other adverse factors weigh against a favorable exercise of discretion. USCIS may also exercise discretion favorably notwithstanding the above concerns if case-specific circumstances warrant it.

Recognizing that many factors may influence whether criminal activity is prosecuted and results in a conviction, an arrest for a serious crime is relevant to whether USCIS should exercise its discretion favorably. A determination about whether to favorably exercise discretion when there are indicators of national security or public safety concerns requires a comprehensive review of the available evidence.

For example, officers may need to request additional evidence or information in certain cases where security checks indicate that a petitioner has an arrest record.[21] Therefore, USCIS does not conduct this in-depth, discretionary review during the BFD process. Instead, if USCIS determines that a petitioner may pose a risk to national security or public safety, or has other relevant adverse factors that would require further review, and therefore will not receive a BFD EAD, USCIS initiates a waiting list adjudication and conducts a comprehensive discretionary review as part of the evaluation of Form I-192 if one is submitted.

USCIS evaluates all evidence provided by petitioners regarding their arrest records before making determinations for waiting list placement.[22]

## C. Adjudicative Process

USCIS evaluates all petitions for U nonimmigrant status filed by noncitizens living in the United States as described above.[23] If USCIS determines a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them BFD EADs and grants deferred action.

USCIS initiates waiting list adjudication for petitioners who do not receive BFD EADs. When USCIS determines a principal petitioner will not receive a BFD EAD, USCIS proceeds to a full adjudication for waiting list placement for the principal petitioner and his or her qualifying family members.

A determination that a petitioner will not receive a BFD EAD and deferred action is not a denial of Form I-918 or the Application for Employment Authorization (Form I-765). A petitioner who does not receive a BFD EAD and deferred action is evaluated for waiting list eligibility and still has the opportunity to obtain employment authorization and a grant of deferred action if deemed eligible for waiting list placement. Consequently, non-issuance of a BFD EAD is not a final agency action. Correspondingly, USCIS does not accept or process motions to reopen or reconsider, appeals,[24] or requests to re-apply for a BFD EAD.

For any qualifying family member who will not receive a BFD EAD, USCIS completes a full adjudication for that qualifying family member. The full adjudication includes the issuance of Requests for Evidence (RFEs) to address any deficiencies or concerns identified in the qualifying family member's record but it is not an adjudication for waiting list placement. Because qualifying family members are "accompanying or following to join" the principal petitioner, they will not be placed on the waiting list unless the principal petitioner was placed on the waiting list.[25]

If the qualifying family member resolves the deficiencies or concerns in the record, USCIS issues a BFD EAD and grants deferred action to the qualifying family member. If additional evidence provided by the qualifying family member does not resolve the deficiencies or concerns identified, then USCIS does not issue a BFD EAD and generally places the qualifying family member's petition with the principal petition back in line to await a final statutory cap adjudication.

When USCIS issues a final decision to the principal petitioner, USCIS also issues a final decision for any qualifying family member who did not receive a BFD EAD. USCIS retains the authority to deny any petition when, after full adjudication, USCIS determines the qualifying family member is ineligible for the underlying benefit.

For example, USCIS may deny the petition where the record establishes that the claimed family member does not have a qualifying family relationship with the petitioner, or where USCIS determines a favorable exercise of discretion is not warranted to waive the qualifying family member's grounds of inadmissibility.

## 1. Criminal History Check for Bona Fide Determination Employment Authorization Documents

To efficiently determine whether to issue BFD EADs and grant deferred action, USCIS conducts background and security checks to identify petitioners who may pose risks to national security and public safety, or other adverse discretionary factors. USCIS relies on a variety of databases that collect information from law enforcement agencies and other federal, state, local, and tribal agencies, including information regarding arrests and convictions.

USCIS uses this information to determine whether a petitioner is admissible for the purposes of receiving a grant of U nonimmigrant status or merits a favorable exercise of discretion to waive any grounds of

inadmissibility. USCIS' consideration of national security and public safety risks at the BFD EAD stage aligns with inadmissibility grounds evaluated during the adjudication of a petition for U nonimmigrant status and is therefore a consistent exercise of discretion within the authority afforded by INA 214(p)(6) to grant BFD EADs.

A petitioner who is not issued a BFD EAD due to the risk the petitioner appears to pose to national security or public safety receives a full adjudication for waiting list placement. During the adjudication for waiting list placement, petitioners have the opportunity to provide USCIS with potentially mitigating information or other evidence pertaining to arrests or convictions.

USCIS issues petitioners a BFD EAD and grants deferred action in order to promote victim stability and continued cooperation with law enforcement. However, USCIS updates and reviews background and security checks at regular intervals during the validity period of a principal petitioner or a qualifying family member's BFD EAD.

Additionally, USCIS retains discretion to update background and security checks at any time when case-specific circumstances warrant. During those reviews, USCIS evaluates whether the petitioner and qualifying family members who have been granted BFD EADs and deferred action continue to warrant the BFD EAD and merit a favorable exercise of discretion while their petitions for U nonimmigrant status are pending with USCIS.

USCIS reserves the right to revoke the BFD EAD[26] and terminate the grant of deferred action at any time if it determines the BFD EAD or favorable exercise of discretion are no longer warranted, or the prior BFD EAD and deferred action were granted in error.

For example, USCIS may revoke the BFD EAD and terminate deferred action if USCIS identifies any adverse information, such as new information pertaining to the risks the petitioner poses to national security or public safety, or the withdrawal of a petitioner's Form I-918, Supplement B. At that time, USCIS initiates a waiting list adjudication to gather additional information and evidence to determine if the petitioner is eligible for a waiver of inadmissibility for any relevant inadmissibility grounds and placement on the waiting list.

## 2. Previously Filed Form I-765 for Bona Fide Determination Process

USCIS uses all Applications for Employment Authorization (Form I-765) already filed by principal petitioners under 8 CFR 274a.12(a)(19) and (c)(14) to issue a BFD EAD. USCIS also uses Form I-765 applications previously filed under 8 CFR 274a.12(a)(20) and (c)(14) for a qualifying family member to issue a BFD EAD to qualifying family members. Using previously filed applications limits the burden on petitioners to file additional paperwork.

Where a petitioner has filed a Form I-918 but has not filed an accompanying application for employment authorization under 8 CFR 274a.12(a)(19), (a)(20) or (c)(14), USCIS issues a notice indicating that the petitioner has received a BFD and may receive a BFD EAD. To obtain an EAD, the petitioner must file a Form I-765 after receiving this notice.

## 3. Bona Fide Determination Employment Authorization Document Issuance

Once USCIS has determined that a petitioner present in the United States has a bona fide petition and merits a favorable exercise of discretion, and therefore may receive a BFD EAD, USCIS issues a notice to inform the petitioner of the decision.

Such petitioners who have already filed a Form I-765 under either of the EAD classifications noted above then receive an EAD and a grant of deferred action valid for 4 years. Petitioners who must file a new Form I-765 after receiving the BFD notice from USCIS receive employment authorization and deferred action valid for 4 years once USCIS finishes adjudicating the Form I-765.

## 4. Prima Facie Case for Approval

Where USCIS issues a BFD EAD to a petitioner, the petitioner is also considered to have established a prima facie case for approval within the meaning of INA 237(d)(1). The term "prima facie" refers to a petition appearing sufficient on its face.

The evaluation performed by USCIS to determine whether a petition is bona fide and whether a petitioner receives a BFD EAD is a more complex evaluation than looking at the petition on its face alone. The BFD process satisfies the prima facie standard that U.S. Immigration and Customs Enforcement (ICE) previously requested in specific circumstances[27] since the steps taken to determine whether a petition is bona fide and a petitioner receives a BFD EAD rely on the initial evidence submitted with a petition for U nonimmigrant status, as well as the results of background checks.

## 5. Waiting List Adjudication for Petitioners Not Issued a Bona Fide Determination Employment Authorization Document

Once an officer has determined that a petitioner will not receive a BFD EAD, the officer reviews the complete filing and identifies any deficiencies or concerns that need to be addressed for waiting list adjudication. The officer then issues an RFE or Notice of Intent to Deny (NOID), which includes:[28]

- A notice explaining that USCIS will not be issuing a BFD EAD; and
- An RFE to address any deficiencies or concerns associated with waiting list adjudication.

If USCIS determines that a petitioner will not receive a BFD EAD, but can be placed on the waiting list, that decision generally does not affect the timeline in which the petition for U nonimmigrant status is adjudicated for final determination of U nonimmigrant status. If USCIS determines that a petitioner will not receive a BFD EAD and cannot be placed on the waiting list, USCIS will deny the petition.

## 6. Request to Renew Bona Fide Determination Employment Authorization Document and Deferred Action

Generally, USCIS does not charge a fee for the filing of certain victim-based and humanitarian benefit requests, including Form I-918 and Form I-918, Supplement A.[29] Consequently, petitioners who receive BFD EADs do not need to submit a filing fee for the initial Form I-765 associated with the BFD EAD. Petitioners who choose to renew their BFD EADs may do so under existing procedures without a fee.[30] Once a BFD EAD is renewed, the accompanying grant of deferred action is also renewed.

TVPRA 2008 requires USCIS to permit petitioners for U nonimmigrant status to apply for fee waivers for "any fees associated with filing an application for relief through final adjudication of the adjustment of status."[31] USCIS has interpreted this to mean that, in addition to the main benefit request, applicants and petitioners must have the opportunity to request a fee waiver for any form associated with the main benefit, including applications for waivers of inadmissibility or employment authorization. Principal petitioners and qualifying

family members who are seeking to renew a BFD EAD must either submit a filing fee or submit a Request for Fee Waiver (Form I-912).

An initial BFD EAD grant does not guarantee future renewals. Principal petitioners and qualifying family members are evaluated independently for each EAD and deferred action renewal to ensure that the BFD EAD and grant of deferred action are still warranted as a matter of discretion.

>Additionally, USCIS may identify principal petitioners and qualifying family members who pose a risk to national security and public safety during the validity period of the BFD EAD and deferred action, until final adjudication of U nonimmigrant status.

At any point during the validity period, USCIS has the right to revoke employment authorization or terminate deferred action if USCIS determines a national security or public safety concern is present, if USCIS determines the BFD EAD and deferred action is no longer warranted, the Form I-918 Supplement B law enforcement certification is withdrawn, or USCIS determines the prior BFD EAD was issued in error.[32]

If USCIS determines that adverse information may impact a principal petitioner's ability to maintain a BFD EAD and deferred action, USCIS will initiate a waiting list review for the principal petition. Similarly, if USCIS determines that adverse information may impact a qualifying family member's ability to maintain a BFD EAD and deferred action, USCIS will conduct a full adjudication of the qualifying family member's petition as described above to determine whether the qualifying family member can maintain a BFD EAD and deferred action.

An initial grant or renewal of a BFD EAD and deferred action does not guarantee that USCIS will approve the principal petitioner or his or her qualifying family members for U nonimmigrant status. Generally, USCIS adjudicates petitions for U nonimmigrant status in the order in which they are received, subject to limited exceptions. When the principal petitioner's filing is next in line for final adjudication, an officer assesses eligibility requirements for U nonimmigrant status. This adjudication does not include consideration of prior grants or renewals of BFD EAD or deferred action.

## 7. Petitioners Residing Outside of the United States

USCIS only issues BFD EADs and deferred action to petitioners living in the United States as it cannot provide deferred action or employment authorization to petitioners outside the United States. Deferred action, as an exercise of prosecutorial discretion to make a noncitizen a lower priority for removal from the United States, is only applicable to noncitizens in the United States. Additionally, INA 274A gives the Secretary of Homeland Security, and USCIS as his or her designee, authority over noncitizen employment authorization in the United States.

Because the BFD EAD is only for petitioners living in the United States, principal petitioners (and their qualifying family members) who live outside of the United States proceed directly to waiting list adjudication.

Generally, USCIS adjudicates cases in the order in which they were received to determine waiting list placement. If USCIS determines a principal petitioner residing outside the United States is eligible for waiting list placement, the principal petitioner and his or her qualifying family members should submit a Form I-765 upon admission to the United States to receive an EAD.

# Footnotes

[^ 1] See INA 214(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U).").

[^ 2] See Appendix: Bona Fide Determination Process Flowchart [3 USCIS-PM C.5, Appendices Tab].

[^ 3] See Black's Law Dictionary (11th ed. 2019).

[^ 4] Submission of biometrics is a requirement for principal petitioners as well as derivatives. See 8 CFR 214.14(c)(3) and 8 CFR 214.14(f)(5).

[^ 5] See Pub. L. 110-457 (PDF) (December 23, 2008). See INA 214(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U).").

[^ 6] See INA 274A. See 8 CFR 274a.12(a), (b), (c) (referring to employment in the United States).

[^ 7] See 8 CFR 214.14(c)(2).

[^ 8] One of the main purposes for issuing employment authorization to those with pending, bona fide petitions is to provide EADs to good faith petitioners who are vulnerable due to lengthy wait times. Requiring and adjudicating Form I-192 for purposes of the EAD would delay the EAD adjudication and undermine efficiency. Instead of adjudicating the Form I-192 at this stage, USCIS relies on criminal history checks.

[^ 9] See instructions for the Petition for U Nonimmigrant Status (Form I-918).

[^ 10] The principal petitioner enables access to the benefits associated with U nonimmigrant status for the qualifying family member. Therefore, USCIS does not consider a qualifying family member for a BFD unless the principal petitioner receives a BFD.

[^ 11] Under INA 214(p)(4), USCIS considers any credible evidence relevant to the petition.

[^ 12] See instructions for Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A).

[^ 13] See INA 212(a)(3).

[^ 14] See Section C, Adjudicative Process, Subsection 1, Criminal History Check for BFD EADs [3 USCIS-PM C.5(C)(1)].

[^ 15] See INA 214(p)(6) ("The Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U).") (emphasis added).

[^ 16] See INA 212(a).

[^ 17] As listed in INA 212(a)(3).

[^ 18] Such as those defined in INA 101(a)(43)(C) and (E).

[^ 19] As defined in INA 101(a)(43)(K)(iii).

[^ 20] This includes acts defined in INA 101(a)(43)(B).

[^ 21] See *Matter of Arreguin*, 21 I&N Dec. 38, 42 (BIA 1995) (considering but hesitating to give "substantial weight" to an uncorroborated arrest report). See *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1350 (11th Cir. 2010)

("Absent corroboration, the arrest reports by themselves do not offer reasonable, substantial, and probative evidence that there is reason to believe Garces engaged in drug trafficking.").

[^ 22] See *Henry v. I.N.S.*, 74 F.3d 1, 6 (1st Cir. 1996) (noting "while an arrest, without more, is simply an unproven charge, the fact of the arrest, and its attendant circumstances, often have probative value in immigration proceedings.").

[^ 23] See Section A, Principal Petitioners [3 USCIS-PM C.5(A)] and Section B, Qualifying Family Members [3 USCIS-PM C.5(B)].

[^ 24] Appeals are not available to applicants who have been denied employment authorization under 8 CFR 274a.13(c). Therefore, even if the BFD EAD issuance was considered a final agency action, the lack of an appeals process for BFD EADs aligns with regulatory practice pertaining to employment authorization generally.

[^ 25] See INA 101(a)(15)(U)(ii).

[^ 26] See 8 CFR 274a.14(b).

[^ 27] See ICE's Revision of Stay of Removal Request Reviews for U Visa Petitioners webpage.

[^ 28] See Chapter 6, Waiting List [3 USCIS-PM C.6].

[^ 29] See Fee Schedule (Form G-1055).

[^ 30] See 8 CFR 274a.13(d). See Instructions for Form I-765. See Fee Schedule (Form G-1055).

[^ 31] See INA 245(l)(7).

[^ 32] See 8 CFR 274a.14(b).

Current as of January 15, 2025

**Appendix: Bona Fide Determination Process Flowchart**

Form I-918 filed by principal petitioner living in the United States is received by USCIS.



U.S. Citizenship and Immigration Services

MENU



# Chapter 6 - Waiting List



---

When the 10,000 visas under the statutory cap have been allocated in a given fiscal year, USCIS places remaining petitioners eligible for U nonimmigrant status on the waiting list. Principal petitioners placed on the waiting list are eligible for employment authorization and receive a grant of deferred action or, in limited circumstances, parole.[1] Additionally, USCIS grants these same benefits to the qualifying family members of principal petitioners placed on the waiting list.

Officers initiate a waiting list adjudication for petitioners who do not receive employment authorization and deferred action based on the Bona Fide Determination (BFD) process.[2] While the BFD process does not include a full analysis of eligibility requirements, USCIS conducts a full adjudication necessary to determine eligibility for U nonimmigrant status as part of the waiting list process. Unlike the BFD process, officers may issue a Request for Evidence (RFE) or a Notice of Intent to Deny (NOID) to gather additional information necessary to adjudicate for waiting list placement.

Consistent with longstanding practice, U.S. Immigration and Customs Enforcement (ICE) may request expedited waiting list adjudications for specific petitioners, in relation to enforcement priorities.[3]

Except in cases where ICE requests expedited waiting list adjudication, or where USCIS revokes the Bona Fide Determination Employment Authorization Document (BFD EAD) and terminates deferred action, USCIS generally does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to.

## A. Eligibility

To be placed on the waiting list, a petitioner must establish all statutory and regulatory requirements by a preponderance of the evidence.[4] At the time of placement on the waiting list, a petitioner is considered eligible for U nonimmigrant status, but not granted U nonimmigrant status "due sc

Need Help? Chat with Emma™

petitioners placed on the waiting list are generally approved for U nonimmigrant status, approval is not guaranteed.[6]

## B. Adjudication of Waiting List Eligibility

USCIS determines waiting list placement on a case-by-case basis. Officers:

- Perform a full evaluation of eligibility requirements, which includes but is not limited to:
  - Determining whether the petitioner was the victim of qualifying criminal activity or qualifying crime (QCA);
  - Analyzing evidence submitted to establish substantial mental and physical abuse;
  - Assessing the U Nonimmigrant Status Certification (Form I-918, Supplement B) for all details regarding the QCA;
- Complete a full review of background checks; and
  - Determine whether any applicable inadmissibility grounds are waivable in the exercise of discretion in the final adjudication, which includes a detailed, individualized assessment for principal petitioners and qualifying family members who have one or more applicable grounds of inadmissibility.[7]

Petitioners or qualifying family members who are inadmissible under INA 212(a) are generally ineligible to receive visas or be admitted to the United States. USCIS may exercise its discretion to deny waiver requests in the following circumstances:

- Noncitizens with criminal histories or serious immigration violations;
- Noncitizens who pose a national security or public safety risk;
- Noncitizens determined to have committed fraud or misrepresentation; or
- For any other reasons that USCIS deems necessary and appropriate.

For example, officers may need to request additional evidence or information in certain cases where security checks indicate that a petitioner has an arrest record.[8] The courts and administrative appellate bodies have deemed an arrest record, as well as police reports and other corroborating information, as appropriate for consideration for purposes of applications for discretionary relief, provided that the evidentiary weight of the arrest and police reports is properly assessed and considered.[9]

Although officers fully evaluate a petition for placement on the waiting list, officers must review the filing again and determine that the petitioner remains eligible for U nonimmigrant status before approving the petition when space becomes available under the statutory cap in a subsequent fiscal year.

*Decision*

Upon determining eligibility for waiting list placement, USCIS issues a notice to petitioners with information regarding eligibility for work authorization and deferred action. Employment authorization based on deferred action is permitted under 8 CFR 274a.12(c)(14) to petitioners living in the United States who have filed an Application for Employment Authorization (Form I-765).

Waitlisted petitioners remain on the waiting list until their petitions are adjudicated for U nonimmigrant status in the order they were received. Grants of deferred action or parole to principal petitioners placed on

the waiting list, and their qualifying family members, are preserved until a final agency decision is made on the petition, unless the individual grant of deferred action or parole is terminated at USCIS' discretion.[10]

Waitlisted petitioners do not accrue unlawful presence while on the waiting list.[11] Petitioners on the waiting list and their qualifying family members, who are outside the United States, may generally seek parole on a case-by-case basis through the processes available to other noncitizens.

Principal petitioners placed on the waiting list, and their qualifying family members, receive employment authorization valid for a period of 4 years, similar to petitioners who receive a BFD EAD. Principal petitioners who file an application for employment authorization under 8 CFR 274a.12(c)(14) must submit a fee or a Request for Fee Waiver (Form I-912). Principal petitioners placed on the waiting list and their qualifying family members may request renewals of employment authorization and deferred action if they remain on the waiting list longer than 4 years.

Principal petitioners are granted employment authorization incident to a grant of U nonimmigrant status. Consequently, USCIS converts applications for employment authorization under 8 CFR 274a.12(a)(19) to 8 CFR 274a.12(c)(14) for principal petitioners placed on the waiting list.

For applications for employment authorization under 8 CFR 274a.12(a)(20) or (c)(14), qualifying family members must submit a fee or a Form I-912.[12]

USCIS issues an RFE or NOID to principal petitioners who are determined ineligible for waiting list placement based on the file review. Petitioners have the opportunity to submit additional information to address deficiencies or concerns identified in the RFE or the NOID. If, after reviewing the additional evidence, the officer determines that the petitioner has not established eligibility for U nonimmigrant status by a preponderance of the evidence, USCIS issues a notice of denial of the petition for U nonimmigrant status to the petitioner.

# Footnotes

[^ 1] See 8 CFR 214.14(d)(2).

[^ 2] See Chapter 5, Bona Fide Determination Process [3 USCIS-PM C.5].

[^ 3] See ICE Directive 11005.2: Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners, issued August 2, 2019.

[^ 4] See Chapter 2, Eligibility Requirements for U Nonimmigrant Status, Section A, Principal Petitioners [3 USCIS-PM C.2].

[^ 5] See 8 CFR 214.14(d)(2).

[^ 6] See Chapter 7, Adjudication for Statutory Cap, Section C, Adjudicative Order [3 USCIS-PM C.7].

[^ 7] Congress granted DHS the discretionary authority to waive most inadmissibility grounds for a person seeking U nonimmigrant status if it is in the public or national interest to do so. See INA 212(d)(3)(A)(ii). See INA 212(d)(14) (authorizing the waiver of any inadmissibility ground except for participation in Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing). See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 8] See *Matter of Arreguin*, 21 I&N Dec. 38, 42 (BIA 1995) (considering but hesitating to give "substantial weight" to an uncorroborated arrest report). See *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1350 (11th Cir. 2010) ("Absent corroboration, the arrest reports by themselves do not offer reasonable, substantial, and probative evidence that there is reason to believe Garces engaged in drug trafficking.").

[^ 9] See *Paredes-Urrestarazu v. U.S. l.N.S.*, 36 F.3d 801, 810 (9th Cir. 1994) *Paredes-Urrestarazu v. I.N.S.*, 36 F.3d 801, 810 (9th Cir. 1994) (holding that an arrest can be relevant to a discretionary determination). See *Matter of Grijalva* (PDF), 19 I&N Dec. 713, 721-22 (BIA 1988) (hearsay evidence is admissible in deportation proceedings unless its use is fundamentally unfair; the admission into evidence of police reports concerning the circumstances of an arrest and conviction is appropriate in cases involving discretionary relief). See *Matter of Teixeira* (PDF), 21 I&N Dec. 316, 321 (BIA 1996) (police reports that are not part of the "record of conviction" may be appropriately considered for purposes of an application for discretionary relief, where the focus is on conduct rather than conviction). See *Avila-Ramirez v. Holder*, 764 F.3d 717, 725 (7th Cir. 2014) (consideration of arrest reports in the weighing of discretionary factors is not prohibited but must be given appropriate evidentiary weight). See *Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) (noting "it is settled beyond hope of contradiction that in reviewing requests for discretionary relief, immigration courts may consider police reports" and that this holds true even where there is no conviction.).

[^ 10] See 8 CFR 214.14(d)(3).

[^ 11] See INA 212(a)(9)(B). See 8 CFR 214.14(d)(3).

[^ 12] See 8 CFR 274a.12(c)(14).

Current as of January 15, 2025

U.S. Citizenship and Immigration Services

MENU



# Chapter 7 - Final Adjudication

**Guidance**

Resources (21)

Appendices (2)

Updates (2)

History (0)

## A. Determination of U Nonimmigrant Status for A Petitioner Granted A Bona Fide Determination Employment Authorization Document and Deferred Action

A Bona Fide Determination Employment Authorization Document (BFD EAD) and grant of deferred action does not guarantee eligibility for U nonimmigrant status at the time a visa becomes available in a given fiscal year under the statutory cap.

Officers perform a full file review to determine eligibility for U nonimmigrant status for petitioners granted employment authorization and deferred action, as a matter of discretion, through the BFD process.

USCIS determines eligibility for U nonimmigrant status on a case-by-case basis. Officers:

- Perform a full evaluation of eligibility requirements, which includes but is not limited to:
  - Determining whether the petitioner was the victim of qualifying criminal activity or qualifying crime (QCA);
  - Analyzing evidence submitted to establish substantial mental and physical abuse;
  - Assessing the U Nonimmigrant Status Certification (Form I-918, Supplement B) law enforcement certification for all details regarding the QCA;
- Complete a full review of background checks; and
- Determine whether any applicable inadmissibility grounds are waivable in the exercise of discretion, which includes a detailed, individualized assessment for principal petitioners and qualifying family members who have one or more applicable grounds of inadmissibility.[1]

Need Help? Chat with Emma™

Petitioners and qualifying family members seeking U nonimmigrant status who USCIS determines are inadmissible,[2] and do not warrant the favorable exercise of discretion to waive such inadmissibility, are generally ineligible to receive visas or be admitted to the United States. USCIS may exercise its discretion to deny waiver requests in the following circumstances:[3]

- Noncitizens with criminal histories and serious immigration violations;
- Noncitizens who pose a national security or public safety risk;
- Noncitizens determined to have committed fraud or misrepresentation; or
- For any other reasons that USCIS deems necessary and appropriate.

## B. Determination of U Nonimmigrant Status for Petitioners Placed on the Waiting List

Although officers fully evaluate a petition for placement on the waiting list, officers conduct an additional review of the petition and update background checks to establish continuing eligibility before approving the petition when a visa becomes available in a subsequent fiscal year.

If the principal petitioner or qualifying family member has failed to establish one of the eligibility requirements, USCIS issues a Request for Evidence (RFE) to the petitioner. Petitioners have the opportunity to submit additional information to address deficiencies or concerns identified in the RFE.

Placement on the waiting list does not guarantee a grant of U nonimmigrant status. USCIS may deny a petition for U nonimmigrant status if USCIS determines the petitioner is ineligible. For example, officers may deny a petition for U nonimmigrant status where acts of criminality or immigration violations occurring after a petitioner was placed on the waiting list trigger inadmissibility grounds and USCIS does not favorably exercise its discretion to waive those grounds. Officers may also deny a petition where a certifier has withdrawn the Form I-918, Supplement B after USCIS placed the petitioner on the waiting list.

## C. Order of Adjudication

Neither Congress nor USCIS anticipated filings to significantly exceed the statutory cap every year. The waiting list was first created as an intermediate mechanism for a small number of petitioners who could not be granted U nonimmigrant status in a fiscal year due to the limited number of visa numbers allotted under the statutory cap.[4] The BFD process was created as an additional mechanism to provide petitioners with bona fide petitions with employment authorization and deferred action, which are benefits equal to those accorded to petitioners placed on the waiting list.

Although current regulatory language notes the prioritization of petitioners placed on the waiting list for grants of U nonimmigrant status under the statutory cap as visas become available,[5] the regulation also clearly envisions "the oldest petitions receiving the highest priority" for such visa numbers.

To best reconcile these regulatory provisions with the BFD policy, and to maintain fairness between petitioners placed on the waiting list and petitioners issued BFD EADs, USCIS prioritizes all petitions for adjudication of U nonimmigrant status under the statutory cap in the order they were received, ensuring older petitions maintain their priority over newer petitions.

Consequently, when U nonimmigrant visas become available each fiscal year, USCIS draws from both BFD recipients and waitlisted petitioners, in order of filing date with the oldest filings receiving highest priority, to meet the statutory cap.

# D. Decision

## 1. Approval

*Petitioners Living Inside the United States*

Upon approval, principal petitioners and their qualifying family members living in the United States receive a grant of U nonimmigrant status, valid for a period of no more than 4 years.

*Principal Petitioners*

After USCIS approves U nonimmigrant status for a principal petitioner living in the United States, USCIS notifies the petitioner of such approval by issuing a Notice of Action (Form I-797). USCIS also includes an Arrival-Departure Record (Form I-94), indicating U-1 nonimmigrant status.

Principal petitioners living in the United States receive employment authorization incident to a grant of U nonimmigrant status.[6] However, petitioners living outside the United States do not receive an initial employment authorization document until they have obtained a U nonimmigrant visa at a U.S. consulate or embassy and have been admitted to the United States as a U nonimmigrant.

*Qualifying Family Members*

USCIS may not approve U nonimmigrant status for a qualifying family member unless USCIS has granted the principal petitioner U nonimmigrant status.

When USCIS approves a Petition for Qualifying Family Member of a U-1 Recipient (Form I-918, Supplement A) for a qualifying family member living in the United States, it concurrently grants that petitioner U-2, U-3, U-4, or U-5 nonimmigrant status.

USCIS issues the Form I-797 regarding the approval of U-2, U-3, U-4, or U-5 nonimmigrant status to the principal petitioner. USCIS also issues a Form I-94 indicating U-2, U-3, U-4, or U-5 nonimmigrant status.

**Classes of Applicants and Corresponding Codes of Admission**

| Applicant | Code of Admission |
|---|---|
| Principal Petitioner | U-1 |
| Spouse of Principal Petitioner | U-2 |
| Unmarried Child under the age of 21 of Principal Petitioner | U-3 |

| Applicant | Code of Admission |
|---|---|
| Parent of Principal Petitioner (who is under the age of 21) | U-4 |
| Unmarried Sibling under the age of 18 of Principal Petitioner (who is under the age of 21) | U-5 |

Qualifying family members must submit a fee or a Request for Fee Waiver (Form I-912) for an Application for Employment Authorization (Form I-765) associated with a grant of U nonimmigrant status.[7]

*Petitioners Living Outside the United States*

After USCIS approves U nonimmigrant status for a principal petitioner or qualifying family member living outside the United States, USCIS notifies the principal petitioner of such approval on Form I-797. USCIS also forwards the notice to the U.S. Department of State (DOS).

DOS communicates the approval to the U.S. embassy or consulate with jurisdiction over the area in which the principal petitioner or qualifying family member is located. DOS communicates the approval to the appropriate port of entry for principal petitioners or qualifying family members who are from countries that are exempt from visa requirements.[8] The approved petitioners and qualifying family members may then seek admission to the United States as U nonimmigrants at a designated port of entry.

## 2. Denial

USCIS provides written notification to the principal petitioner, listing the reasons for the denial of a Petition for U nonimmigrant status (Form I-918), and a Form I-918 Supplement A, where applicable.[9] A principal petitioner may request USCIS to reconsider the denial by filing a Notice of Appeal or Motion (Form I-290B).

Alternatively, the principal petitioner may appeal the denial to the Administrative Appeals Office (AAO).[10] If a principal petitioner pursues an appeal, the denial of U nonimmigrant status is not deemed administratively final until the AAO issues a decision affirming the denial.

The denial of a petition for U nonimmigrant status automatically lifts any stay of removal based on the U nonimmigrant status petition as of the date the denial becomes administratively final for a principal petitioner or qualifying family member subject to an order of removal, deportation, or exclusion.

# Footnotes

[^ 1] Congress granted DHS the discretionary authority to waive most inadmissibility grounds for a noncitizen seeking U nonimmigrant status if it is in the public or national interest to do so. See INA 212(d)(3)(A)(ii). See INA 212(d)(14) (authorizing the waiver of any inadmissibility ground except for participation in Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing). See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 2] See INA 212(a).

[^ 3] See 8 CFR 212.17.

[^ 4] See 72 FR 53013 (PDF), 53033 (Sept. 17, 2007) (estimating USCIS would receive 12,000 principal petitions per year). See Number of Form I-918, Petition for U Nonimmigrant Status By Fiscal Year, Quarter, and Case Status (Fiscal Years 2009-2020).

[^ 5] See 8 CFR 214.14(d)(2) ("After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U–1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed.").

[^ 6] See 8 CFR 274a.12(c).

[^ 7] See 8 CFR 274a.12(a)(20).

[^ 8] See DOS's Visa Waiver Program webpage.

[^ 9] See 8 CFR 103.3(a)(1).

[^ 10] See 8 CFR 103.3.

Current as of January 15, 2025

# Chapter 7 - Final Adjudication

Guidance

Resources (21)

Appendices (2)

Updates (2)

History (0)

## Appendices

### Appendix: Bona Fide Determination Process and Administrative Procedure Act Considerations

## A. Background

A noncitizen granted U-1 nonimmigrant status as a principal petitioner is employment authorized incident to status. USCIS automatically issues an Employment Authorization Document (EAD) to principal petitioners upon the approval of the U nonimmigrant status petition.[1]

The statute only allows 10,000 U nonimmigrant visas to be issued every fiscal year.[2] If the number of approvable petitions exceeds 10,000, USCIS places the approvable petitions on a waiting list. Once they are on the waiting list, USCIS grants deferred action or, in limited circumstances, parole to U-1 principal petitioners and qualifying family members and, as a matter of discretion, may authorize employment for such petitioners and qualifying family members.[3] USCIS generally provides such employment authorization under 8 CFR 274a.12(c)(14). Under the existing regulatory structure, noncitizens with pending petitions are currently unable to apply for employment authorization before waiting list placement.

The William Wilberforce Trafficking Victims Reauthorization Act of 2008 (TVPRA 2008), signed into law on December 23, 2008, amended Section 214(p)(6) of the Immigration and Nat[...] provide DHS with discretion to grant employment authorization to a noncitize[...]

Need Help? Chat with Emma™

bona fide petition for U nonimmigrant status.[4] Though permitted by statute, DHS had not previously implemented a process for providing such employment authorization, separate from the existing regulatory waiting list, before June 14, 2021.

The permissive language of INA 214(p)(6) does not require the agency to create a separate employment authorization process. However, because of drastic increases in the volume of U nonimmigrant petitions and a growing backlog, USCIS decided to exercise its discretion to conduct bona fide determinations (BFD) and provide EADs and deferred action to noncitizens with pending, bona fide petitions who meet certain discretionary standards, beginning on June 14, 2021.

INA 103(a) grants the Secretary of Homeland Security the authority to enforce the immigration laws and provides general authority for deferred action. The U.S. Supreme Court has clarified that decisions made to either initiate or terminate enforcement proceedings are under the purview of the Executive Branch,[5] and therefore fall within DHS's authority. The Executive Branch has exercised its discretion to grant deferred action, and the federal courts have consistently recognized the existence of this authority, since the mid-1970s.[6]

While USCIS has approved the statutory maximum of petitions each year since Fiscal Year 2010, the increasing number of petitions and complexity of the adjudication resulted in increased processing times. USCIS attempted to keep up with this increase by shifting resources as well as hiring and training new officers; yet, despite these attempts, the burden quickly outpaced resources given competing demands and priorities across the agency.

Consequently, the number of remaining pending petitions after the annual cap was reached grew dramatically. Though the waiting list was initially conceived to address the gap between petitions filed and available visas, USCIS' ability to adjudicate pending petitions for placement on the waiting list has been and continues to be outmatched by the steady number of new filings.

To illustrate, in 2009, USCIS received 6,850 principal petitions; in 2020, 22,358 principal petitions were filed. From 2015-2018, over 30,000 principal petitions were filed annually.[7] The pending backlog, and the corresponding delay in adjudication time, is due to the increase in U visa filings overall, the complexity of the adjudication, the statutory cap mandated by Congress, and the agency's priorities and limited resources.

As of June 14, 2021, USCIS is unable to adjudicate the tens of thousands of petitions for the waiting list, as well as completing full adjudication for the 10,000 principal visas available under the statutory cap, in a single fiscal year without incurring a negative impact in other humanitarian programs and fee-based applications or petitions.

Taking into consideration the overall filings increase and the numerous adjudications USCIS is responsible for, USCIS must allocate resources among the competing adjudicative priorities and balance the number of resources that can be assigned to the U visa program.

Additionally, as of June 14, 2021, USCIS is facing substantial litigation fueled by the years-long wait times for petitioners to be placed on the waiting list and obtain U nonimmigrant status due to the number of new petitions filed each year exceeding the statutory cap. Case review has revealed that most U nonimmigrant petitioners do not have lawful immigration status and are not otherwise authorized to work, so they may be vulnerable during the lengthy adjudication period.

USCIS recognizes concerns regarding such vulnerability raised by stakeholders and believes implementing the statute's authorization to provide EADs to those with pending, bona fide petitions better aligns the U program with its dual purpose as envisioned by Congress: stabilizing victims of crime and serving as a tool for law enforcement.[8]

In addition, the BFD process enables USCIS to review petitions more efficiently, and provide the benefits of employment authorization and deferred action to more petitioners in a shorter time period than the waiting list process alone, which requires a full adjudicative review of eligibility for nonimmigrant status. USCIS notes that from FY 2009 through FY 2020, over 75 percent of fully adjudicated Petition for U Nonimmigrant Status (Form I-918) have been approved.[9]

Therefore, under this policy, USCIS deems a petition "bona fide" when USCIS determines that the Form I-918 is complete and properly filed[10] and has received the result of the petitioner's biometrics. Because INA 214(p)(6) gives the Secretary of Homeland Security, and USCIS as the Secretary's designee, discretion to issue employment authorization to pending, bona fide principal petitioners and qualifying family members, USCIS also considers whether the principal petitioners or qualifying family members appear to pose a risk to national security[11] or public safety, and otherwise merit a favorable exercise of discretion.

The EAD and deferred action that USCIS issues for these cases is valid for 4 years, subject to termination if USCIS determines a national security or public safety concern has arisen, or a determination that the BFD EAD is no longer warranted, or that the prior BFD EAD and deferred action was issued in error.

USCIS issues BFD EADs under 8 CFR 274a.12(c)(14) because recipients of BFD EADs also receive deferred action. Furthermore, there is currently no other EAD category specifically designated for principal petitioners and qualifying family members with pending, bona fide petitions. INA 214(p)(6) provides the statutory foundation for the implementation of the BFD process, and explicitly speaks to the granting of employment authorization. As such, petitioners granted BFD EADs receive employment authorization documents under 8 CFR 274a.12(c)(14).

## B. Administrative Procedure Act Considerations

The Administrative Procedure Act (APA) excepts interpretive rules; general statements of policy; and rules of agency organization, procedure, or practice from notice and comment requirements.[12]

On June 14, 2021, USCIS updated the Policy Manual to notify the public of its interpretation of "bona fide application" at INA 214(p)(6), its exercise of discretion under that provision, and explain its policy for issuing such EADs and granting deferred action. USCIS' interpretation is reasonable because "bona fide" generally means "made in good faith; without fraud or deceit."[13]

In this context,  USCIS interprets the bona fide standard[14] as being met once the entire petition (including the required certification on Form I-918, Supplement B) is properly filed and biometrics are submitted and received. The completion of the Supplement B by a law enforcement official or judge provides an appropriate assurance of the bona fide nature of the petition in this context.

Likewise, because INA 214(p)(6) gives USCIS discretionary authority to issue such employment authorization, it is reasonable, in the exercise of such discretion,  to assess security checks to determine whether petitioners may pose a threat to national security or public safety before according benefits under this section.

The Policy Manual guidance explains and provides clarification to officers but does not add to the substantive regulations, create legally binding rights or obligations, or change the substantive standards by which USCIS evaluates applications for immigration benefit requests.

## 1. Unfair Surprise and Reliance Interests

An agency changing its interpretation of a regulation should consider, among other factors, whether the interpretative change creates unfair surprise.[15] USCIS is issuing this guidance to clarify what the law and regulations permit or require. USCIS is not restricting the program for pending petitioners; rather, USCIS is using its statutory authority to provide an additional pathway to employment authorization and deferred action. Pending petitioners will not be treated in a disparate or unfair manner, as the evaluation for an EAD is based on the initial evidence petitioners must submit when filing a Petition for U Nonimmigrant Status (**Form I-918**).

This process does not create an undue burden on pending or future petitioners, as it does not change any evidentiary requirement. Rather, it utilizes the filing system already in place to issue benefits to Form I-918 petitioners and mitigate any vulnerabilities they may face due to the lengthy adjudicatory wait times.

Additionally, those who are not granted BFD EADs and deferred action under the first phase of review proceed to the full waiting list adjudication, thereby receiving the same adjudicative review they would have had before this policy implementation. Consequently, the new policy only has an adverse impact on overseas derivatives where the principal petitioner resides in the U.S.

USCIS notes that overseas principal petitioners and qualifying family members would not benefit from this EAD and deferred action process because they are not physically located in the United States. Neither deferred action nor employment authorization are accorded to noncitizens outside the United States.

USCIS considered the potential impact to such petitioners and determined that offering employment authorization and deferred action to the majority of petitioners (as a majority of Form I-918 petitioners are physically located in the United States), coupled with the statutory authority to provide employment to pending, bona fide petitioners, provides numerous benefits.

Additionally, USCIS does not anticipate that overseas principal petitioners and qualifying family members would be harmed by this process, since the agency continues to conduct full waiting list adjudications for overseas principal petitioners and qualifying family members, as the agency has previously done. Consequently, this policy has no adverse impact upon overseas principal petitioners and qualifying family members.

USCIS notes that there will be adverse impacts to overseas qualifying family members where the principal petitioner is in the United States; if the principal petitioner receives the BFD EAD and deferred action, there is not a sufficient basis to conduct a waiting list adjudication for the qualifying family member.

However, USCIS believes the overall benefits of this policy change outweigh the adverse impacts. The BFD process only provides a basic review of the principal petition for U nonimmigrant status, and does not require the petitioner to establish eligibility for U nonimmigrant status but for visa availability in a given fiscal year under the statutory cap.

USCIS cannot provide different levels of adjudication to a principal petitioner and the petitioner's qualifying family members. Advancing qualifying family members to an adjudicative phase beyond that of the principal petitioner would conflict with the INA's requirement that the qualifying family members be "accompanying or following to join" the principal petitioner, and in addition would be confusing and difficult to administer.[16]

USCIS also considered providing petitioners in the United States who have overseas beneficiaries the option of forgoing the BFD process for a waiting list adjudication; however, this would create multiple adjudicatory tracks and result in operational inefficiencies that this policy change was meant to eliminate.

USCIS recognizes that 8 CFR 214.14(d)(2) states, "After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed." Historically, USCIS has interpreted and applied this provision to mean that it will grant visas to those on the waiting list, based on the date the petition was filed, before granting visas to those not on the waiting list. Yet the regulation also clearly states "the oldest petitions receiving the highest priority" for such cap numbers.

Under this policy, as part of the first phase of review, USCIS issues EADs and deferred action to noncitizens in the United States with a bona fide petition, instead of placing them in the queue for a waiting list adjudication. Those who do not receive an EAD under the first phase proceed to the full waiting list adjudication.

That is, if their petitions are approvable, they are placed on the waiting list to receive an EAD and deferred action. As these two tracks receive the same benefits (EAD and deferred action), the most equitable path is to continue to issue visas based on the date a petition is filed, regardless of whether a petitioner is placed on the waiting list or not. USCIS believes this approach best implements the regulatory provision and statute, and provides the greatest benefit to all petitioners, without adversely impacting any petitioner.

USCIS considered the alternative of continuing to adjudicate petitions on the waiting list first, before those with BFD EADs, but believes that would be inequitable and in conflict with the regulatory language directing that the oldest petitions receive the highest priority. Most of those with BFD EADs will never be placed on the waiting list.

To make them wait behind all petitioners on the current waiting list regardless of filing date, and to prioritize those placed on the waiting list in the future, would effectively penalize those who were able to receive BFD EADs because they had properly filed a complete Form I-918 that did not raise any public safety or national security risks. Accordingly, USCIS will adjudicate petitions for U nonimmigrant status in date-filed order, drawing from both BFD EAD recipients and petitioners on the waiting list.

## 2. Criminal History Check for Bona Fide Determination Employment Authorization Documents

Before June 14, 2021, USCIS officers considered criminal history background checks when adjudicating a Form I-918 petition: first, for waiting list placement and second, for the final adjudication when a visa has become available.

USCIS continues to evaluate whether a principal petitioner or a qualifying family member may maintain a BFD EAD and grant of deferred action throughout the 4-year validity period until final adjudication for U nonimmigrant status; however, as of June 14, 2021, USCIS will review and update background and security checks at regular intervals during the validity period of a principal petitioner or qualifying family member's BFD EAD and deferred action. USCIS also retains discretion to update background and security checks at any time when case-specific circumstances warrant.

By reviewing updated background and security checks at regular intervals during the validity period, USCIS will ensure the petitioner continues to pose no risk to public safety and national security. USCIS does not believe this review would adversely impact any petitioner's reliance interests or raise retroactivity concerns, as the checks are already run regularly.

Additionally, implementing these checks allows USCIS to maintain a balance between providing employment authorization to eligible immigrant victims of crime and ensuring the security of the United States. Finally, any public safety and national security issues raised anew after a BFD EAD and deferred action have been granted will be fully evaluated during the waiting list adjudication, under the same adjudicative review as would have occurred before this policy implementation.

## C. Implementation

USCIS began implementing this policy on June 14, 2021. This policy applies to all Form I-918 petitions pending on June 14, 2021, as well as Form I-918 petitions filed on or after that date. The guidance contained in the Policy Manual is controlling and supersedes any related prior guidance.

## Footnotes

[^ 1] See 8 CFR 214.14(c)(7). See Petition for U Nonimmigrant Status (Form I-918).

[^ 2] See INA 214(p)(2).

[^ 3] See 8 CFR 214.14(d)(2).

[^ 4] See Section 201(c) of Pub. L. 110-457 (PDF), 122 Stat. 5044, 5053 (December 23, 2008) (amending INA 214(p)(6)).

[^ 5] See *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (holding that "an agency's decision not to prosecute or enforce. . . is a decision generally committed to an agency's absolute discretion" and noting that enforcement decisions involve a "complicated balancing of a number of factors which are peculiarly within [the agency's expertise, including] whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing.").

[^ 6] See, for example, *Soon Bok Yoon v. INS*, 538 F.2d 1211, 1213 (5th Cir. 1976); *Vergel v. INS*, 536 F.2d 755, 757-58 (8th Cir. 1976); and *Nicholas v. INS*, 590 F.2d 802, 806-08 (9th Cir. 1979), *superseded by rule on other grounds*, as stated in *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1024 (9th Cir. 1985).

[^ 7] See Number of Form I-918, Petition for U Nonimmigrant Status Statistics by Fiscal Year, Quarter, and Case Status (Fiscal Years 2009-2020).

[^ 8] See Section 1502 and 1513(a)(2) of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386 (PDF), 114 Stat. 1464, 1518 (October 28, 2000) ("[P]roviding battered immigrant women and children who were experiencing domestic violence at home with protection against deportation allows them to obtain protection orders against their abusers and frees them to cooperate with law enforcement and prosecutors in criminal cases brought against their abusers and the abusers of their children . . . .").

[^ 9] See Number of Form I-918, Petition for U Nonimmigrant Status By Fiscal Year, Quarter, and Case Status (Fiscal Years 2009-2020).

[^ 10] This includes all required initial evidence, except the Application for Advance Permission to Enter as a Nonimmigrant (Form I-192). One of the main purposes for issuing employment authorization to those with pending, bona fide petitions is to provide EADs to good faith petitioners who are vulnerable due to lengthy wait times. Requiring and adjudicating the Form I-192 for purposes of the EAD would delay the EAD adjudication and undermine the efficiency goals of this change. Instead of adjudicating the Form I-192 at this stage, USCIS relies on criminal history checks.

[^ 11] See INA 212(a)(3).

[^ 12] See 5 U.S.C. 553(b)(A).

[^ 13] See Black's Law Dictionary (11th ed. 2019).

[^ 14] USCIS considered different potential definitions of "bona fide" and ultimately determined that this definition was best suited to this context. USCIS specifically considered the criteria for the "bona fide determination" at 8 CFR 214.11(e), regarding noncitizen victims of severe forms of trafficking, but ultimately decided not to adopt those criteria because of the differences between the U and T visa requirements, such as the law enforcement certification requirement for U nonimmigrant petitioners. See INA 214(p)(1); 8 CFR 214.14(c)(2)(i). The completion of the Supplement B by a law enforcement official or judge provides an appropriate assurance of the bona fide nature of the petition in this context. Additionally, the T regulation requires consideration of waivers of inadmissibility, for which an RFE is often required. This would significantly delay the U BFD adjudication, contrary to Congress' likely intent in authorizing the issuance of this interim benefit. It would also undermine the procedural efficiencies this policy was intended to create in comparison with the waiting list process.

[^ 15] See *Long Island Care at Home Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007). See *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012).

[^ 16] See INA 101(a)(15)(U)(ii).

## Appendix: Bona Fide Determination Process Flowchart

Current as of January 15, 2025