U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 21 A 10:54

CLERK

BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LUIS REGIL JESUS, et al.,

Plaintiffs,

v.

JOSEPH B. EDLOW, Director of U.S. Citizenship and Immigration Services,

Defendant.

Case No. 2:23-cv-34

**ORDER AND OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND ON MOTION TO STRIKE**
**(Docs. 87, 88, 106)**

Plaintiffs are noncitizens who have applied for U nonimmigrant status ("U visas"). They bring this case under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., alleging that United States Citizenship and Immigration Services ("USCIS") has unlawfully withheld[1] waiting list decisions ("WLDs") on their U visas. USCIS has filed a motion for summary judgment (Doc. 87), and Plaintiffs have filled a cross motion for summary judgment (Doc. 88). The parties have completed their briefing, and the motions are ripe for review.

**Statutory History**

The court begins with a brief explanation of the U visa program and adjudicative process. The court provides additional details as necessary throughout the order. The court will cite to the certified administrative record ("CAR") (Doc. 86-2) as appropriate.

[1] The Third Amended Complaint also brings a claim for undue delay in issuing the waiting list decisions. However, the parties agree that (1) if the unlawful-withholding claim fails, so too does the undue delay claim; and (2) if the unlawful-withholding claim succeeds, it entitles Plaintiffs to all of the relief they seek. (*See* Doc. 87 at 23–24; Doc. 90 at 7–8.)

The U visa program, codified at 8 U.S.C. § 1101(a)(15)(U), was created as part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, § 1513(a)(2)(A), 114 Stat. 1464, 1533 (2000). The program allows noncitizens who are victims of crimes in the United States to apply for lawful nonimmigrant status and receive employment authorization. To be eligible, the noncitizen must report the crime and, if asked, assist law enforcement with investigation and prosecution. 8 U.S.C. § 1184(p)(6). Certain family members of a principal U visa petitioner may also be eligible to receive a derivative U visa. *See* 8 C.F.R. § 214.14(f).

USCIS is authorized to issue only 10,000 principal U visas per year, 8 U.S.C. § 1184(p)(2)(A), which has created a significant backlog of applications. To ensure that U visa applicants can receive work authorization and protection from deportation while awaiting their U visas, USCIS created a waiting list for applicants who were eligible for U visas but who could not receive one due to the numerical limit. 8 C.F.R. § 214.14(d)(2). USCIS grants "deferred action or parole" to members of the waitlist, and it may, in its discretion, provide work authorization. *Id.* Deferred action provides protection from immigration enforcement, including removal. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AADC*") ("Approval of deferred action status means that . . . no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated." (internal quotation marks and citation omitted)). Parole "is a process by which USCIS can allow someone to lawfully enter the United States who would otherwise be inadmissible or ineligible for admission into the country." *Rodriguez Hernandez v. Scott*, 775 F. Supp. 3d 821, 823 (D. Vt. 2025) (citing 8 U.S.C. § 1182(d)(5)(A)). The latter is therefore applicable to members of the waitlist who are abroad. *Id.*

Even under these new procedures, it often took years for USCIS to place applicants on the waiting list. Congress therefore passed legislation in 2008 allowing USCIS to issue work authorization and deferred action to petitioners who had submitted a bona fide application for a U visa. 8 U.S.C. § 1184(p)(1)–(6). The hope was that this less searching review would allow USCIS to grant work authorization and deferred action much more quickly than under the waiting list program. USCIS did not, however, act on its power to issue BFDs until 2021, when it announced the new BFD process. (CAR at 20–22); USCIS, *Policy Alert* (PA-2021-13 Jun. 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf [https://perma.cc/S5UD-R99T]. USCIS considers an application to be bona fide "based on the petitioner's compliance with initial evidence requirements and successful completion of background checks." (CAR 26–34); USCIS Policy Manual, Vol. 3, Part C, ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/PW3H-H3A5]. If the application is bona fide, USCIS then considers whether it should grant deferred action and employment authorization as a matter of discretion.

Under the new policy, "USCIS will generally not conduct waiting list adjudications for noncitizens who have been granted BFD [work authorization] and deferred action." (CAR at 21). "Instead, their next adjudicative step will be final adjudication for U nonimmigrant status when space is available under the statutory cap." (*Id.*) USCIS will, however, initiate waiting list adjudications "for petitioners who do not receive BFD [work authorization]." (*Id.* at 29.) USCIS may also initiate waiting list adjudications for petitioners whose BFDs have been revoked. (*Id.* at 30.) In some cases, usually following litigation, USCIS will conduct waiting list adjudications for U visa petitioners or their qualifying relatives who are abroad so those petitioners can be paroled into the United States. (*See, e.g.,* Doc. 18 at 9 (arguing that certain plaintiffs' claims

were moot because USCIS had conducted waiting list decision for them in response to litigation).)

**Factual Background**

All plaintiffs are noncitizens who have applied for U visas. All of them live in the United States and have received favorable BFDs, deferred action, and employment authorization. None has received a WLD. None have qualifying family members living abroad. (*See generally* Docs. 65, 66.)

**Legal Standard**

The APA grants judicial review to parties "adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. "Agency action" includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). The statute directs courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Where an APA-based challenge to agency action presents "a pure question of law, a district court's procedural decision to award summary judgment is generally appropriate." *Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020); *see also Ali v. King*, 555 F. Supp. 3d 8, 14 (S.D.N.Y. 2021) (quoting *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015)). The ordinary summary judgment standard under Fed. R. Civ. P. 56 does not apply. *See New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019); *see also* L.R. 56(a) (statement of undisputed material facts not required for motions challenging administrative actions under the APA).

"[T]raditional administrative law principles" apply to the court's review, including the "'settled proposition[ ]' that 'in reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record.'" *Kakar*, 24 F.4th at 132 (second alteration in original; quoting *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019)). The reviewing court "may not itself supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (quoting *Brodsky v. U.S. Nuclear Regul. Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013)). Further, "'[a]n agency must defend its actions based on the reasons it gave when it acted,' not on 'impermissible *post hoc* rationalizations.'" *Goorakani v. Lyons*, 812 F. Supp. 3d 401, 415 (S.D.N.Y. 2025) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020)).

"When reviewing an agency's decision, a district court must review the whole record." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 598 F. Supp. 3d 98, 108 (S.D.N.Y. 2022). "The whole administrative record consists of all documents and materials directly or indirectly considered by agency decision-makers, including evidence contrary to the agency's position." *Farm Sanctuary v. U.S. Dep't of Agric.*, 664 F. Supp. 3d 334, 346 (W.D.N.Y. 2023) (emphasis omitted) (cleaned up).

## **Analysis**

The parties' motions for summary judgment focus on three issues: (1) whether USCIS's failure to issue WLDs to Plaintiffs has or will imminently cause them an injury, such that they have standing to sue; (2) whether 8 C.F.R. § 214.14(d)(2) requires USCIS to conduct WLDs; and (3) if USCIS is required to conduct WLDs, whether the BFD policy unlawfully directs USCIS to forgo WLDs in most cases. The court begins with the issue of standing.

## I. Constitutional Standing

The Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "For a lawsuit to constitute a case within the meaning of Article III, the plaintiff must have standing to sue." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025). To demonstrate standing, "plaintiffs must show that they possess a personal stake in the dispute and are not mere bystanders." *Id.* (internal quotation marks and citation omitted). This showing involves three elements: "injury in fact, causation, and redressability." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1993)). "The . . . redressability requirement generally serves to ensure that there is a sufficient relationship between the judicial relief requested and the injury suffered." *Diamond Alt. Energy*, 606 U.S. at 112 (internal quotation marks and citation omitted). A claim alleging "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

USCIS's primary argument for summary judgment is that BFDs and WLDs provide essentially identical benefits so, as BFD holders, Plaintiffs have not suffered an injury. Plaintiffs respond that they have suffered five distinct injuries: (1) without WLDs, they cannot travel abroad; (2) when Plaintiffs apply to renew their deferred action, they will face a new, nearly insurmountable discretionary analysis, whereas deferred action is mandatory for WLD holders; (3) without WLDs, they will continue to accrue unlawful presence; (4) without WLDs, they will

not receive their decisions on their eligibility until their final merits adjudication; and (5) as BFD holders, they are at risk of detention and removal by ICE.

### A. Ability to Travel Abroad

The regulation governing WLDs states that "USCIS will grant deferred action or parole" to U visa applicants and their qualifying members "while the . . . petitioners are on the waiting list." 8 C.F.R. 214.14(d)(2). Plaintiffs contend that the regulation therefore allows them to seek a benefit called advance parole, a document that allows a noncitizen to travel outside the United States and seek parole upon their return. *See* 8 C.F.R. §§ 212.5, 245.2(a)(4)(ii)(B). Plaintiffs further contend that, even if § 214.14(d)(2) does not entitle them to advance parole, it allows them to travel abroad, acquire a parole document once abroad, and return to the United States. (Doc. 90 at 4.) USCIS responds that it does not provide advance parole to members of the waiting list and that WLD holders who leave the United States have "no claim of entitlement" to parole under § 214.14(d)(2).

This court addressed the issue of advance parole at the motion-to-dismiss stage, where the court "recognize[d] that a favorable WLD determination does not create an 'entitlement' to advance parole." (Doc. 39 at 11.) At the same time, the court found that a favorable WLD creates an "opportunity to be considered for advance parole" and that the denial of that opportunity was sufficient for standing purposes. (*Id.* at 12.) Now, however, this case is at the summary-judgment stage, and USCIS points to a declaration it previously submitted from Sharon Orise, the Adjudications Division Chief for the Service Center Operations Directorate, which states that USCIS "does not consider waitlisted noncitizens in the United States for advance parole on the basis of waiting list placement." (Doc. 49-1 ¶ 15.) The declaration further states that "[n]oncitizens who are in the United States at the time of waiting list placement are

considered for deferred action and are not subsequently considered for parole based on waiting list placement, even if they depart the United States after waiting list placement." (*Id.* ¶ 10.)

Plaintiffs object that this court is bound to its prior holding by the "law of the case" doctrine and that, in any event, "nothing in the Orise declaration prevents WLD holders inside the United States from traveling outside the United States and requesting parole from the consulate in their country of nationality." (Doc. 90 at 2, 4.) The court previously granted Plaintiffs an opportunity to submit evidence on this issue. (*See* Doc. 104.) Plaintiffs filed a document on September 18, 2026, asserting that "Defendant has exclusive custody of any such evidence" and indicating that they would file a motion under Rule 56(d) but for the court's ruling in Doc. 104 that Plaintiffs are not entitled to discovery on this issue. (Doc. 105 at 1.)[2]

The court agrees with USCIS that, "[g]iven the different standards of review for motions to dismiss and motions for summary judgment," the law-of-the-case doctrine does not apply to the court's earlier ruling that a favorable WLD creates an opportunity to receive parole. *Beckwith v. City of Syracuse*, No. 21-cv-809, 2025 WL 2781685, at *8 (N.D.N.Y. Sept. 30, 2025) (citing *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 244 (N.D.N.Y. 2004); also citing *Nobel Ins. Co. v. City of New York*, No. 00-cv-1328, 2006 WL

---

[2] In the same filing, Plaintiffs offer commentary on "two points [that] deserve mention." (*Id.*) First, they assert that "Defendant has a required, discrete duty under 8 C.F.R. § 214.14(d)(2) to consider at least one parole request for a member of the waiting list abroad, regardless of where the plaintiff was geographically when Defendant placed them on the waiting list." (*Id.*) Second, Plaintiffs cite *U Visa Appellants v. Director, U.S. Citizenship & Immigration Services*, No. 24-6824, 2026 WL 2683743, at *13 (9th Cir. Sept. 14, 2026), for the proposition that "it is reversible error to limit review of Plaintiffs' claims to standing to their injury-in-fact arguments related to waiting list parole." (Doc. 105 at 2.) Defendant moves to strike Plaintiffs' September 18 filing, asserting that Plaintiffs' arguments and citation to the Ninth Circuit case go beyond the supplementation that the court authorized. (Doc. 106.) The court DENIES the motion to strike and GRANTS Defendant's alternative motion for leave to file a response; the court has considered all of the parties' filings on this issue.

2848121, at *4 (S.D.N.Y. Sept. 29, 2006)). Additionally, the Orise declaration specifically states that "[n]oncitizens who are in the United States at the time of waiting list placement are considered for deferred action and are not subsequently considered for parole based on waiting list placement, even if they depart the United States after waiting list placement." (Doc. 49-1 ¶ 10.)

Based on this evidence, receiving favorable WLDs would not provide Plaintiffs—all of whom are located in the United States[3]—with an opportunity to receive advance parole or parole. *See U Visa Appellants*, 2026 WL 2683743, at *12 ("BFD Plaintiffs failed to present facts indicating that waitlisted petitioners have more opportunities to seek parole than non-waitlisted petitioners or that placement on the waitlist creates 'any opportunity to be considered for parole that was previously unavailable' to domestic BFD Plaintiffs . . . ."'); *De Sousa v. Director of USCIS*, 755 F. Supp. 3d 1266, 1275 (N.D. Cal. 2024) ("As detailed above, waiting list placement would not alter Plaintiffs' ability to be considered for parole, or improve their chances in any consideration for parole, regardless of whether their application for parole is made in the United States or abroad. Accordingly, Plaintiffs' principal basis for asserting injury-in-fact fails."). This argument for standing therefore fails.

### B. Mandatory Versus Discretionary Deferred Action

During the briefing of the summary judgment motions, Plaintiffs submitted supplemental authority regarding recent updates to USCIS's deferred-action policy. (Doc. 101.) These updates include statements that "[d]eferred action is an extraordinary form of relief and should be considered a last resort," that "USCIS . . . does not exempt classes or categories of removable

---

[3] The court notes that applicants who receive WLDs while they are abroad *do* have an opportunity to receive parole based on the WLD. *See Rodriguez Hernandez*, 775 F. Supp. 3d at 823–24.

aliens from potential enforcement action," and that "[u]nless required by law, USCIS exercises prosecutorial discretion in very limited and compelling instances." USCIS Policy Manual, Vol. 1, Part I, ch. 5, https://www.uscis.gov/policy-manual/volume-1-part-i-chapter-5 [https://perma.cc/4NWD-WC9W]. The new policy further states that, "[a]s a matter of policy and except as specified otherwise by regulation, USCIS generally will not consider granting deferred action to aliens who are in removal proceedings." *Id.* By contrast, 8 C.F.R. § 214.14(d)(2) states that "USCIS *will* grant deferred action or parole" to U visa applicants and their qualifying members "while the . . . petitioners are on the waiting list."

Plaintiffs argue that, given these changes to USCIS's deferred action policy, there is now a meaningful difference between receiving a favorable BFD and receiving a favorable WLD. Most BFD holders—and all of those who are in removal proceedings—will now be denied deferred action and the employment authorization that goes with it. WLD holders, meanwhile, are entitled by regulation to deferred action given the mandatory language in § 214.14(d)(5).

The Government responds that Plaintiffs already have deferred action, so these new policies do not impact them or inflict an injury upon them. (Doc. 102.) But, as Plaintiffs point out, the deferred action that comes with a BFD lasts for only four years, at which point Plaintiffs will need to apply for renewal of their deferred action. *See* USCIS Policy Manual Vol. 3., Part C, ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/PW3H-H3A5]. And their prior grants of deferred action will not play into the renewal analysis; U visa applicants "are evaluated independently for each EAD and deferred action renewal to ensure that the BFD [work authorization] and grant of deferred action are still warranted as a matter of discretion." *Id.*

This action has already been pending for three years, and BFD deferred action lasts for four years. The wait for an actual U visa will be many years. Plaintiffs will need to apply for renewal of their deferred action, and the practical effect of the new deferred action policy is that most of them will be denied deferred action, including all of the plaintiffs who are in removal proceedings. That harm is imminent, and the language used in the policy notice demonstrates that it is not speculative. *See Spokeo*, 578 U.S. at 339 ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (internal quotation marks and citation omitted)).

In reaching this holding, the court recognizes that not all of the Plaintiffs are guaranteed to be denied deferred action. But, as the Supreme Court has held, "[a]n allegation of future injury may suffice [for standing purposes] if . . . there is a substantial risk that the harm will occur." *Susan B. Anthony List, v. Driehaus*, 573 U.S. 149, 158 (2014) (internal citation and quotation marks omitted). Plaintiffs have met that standard.

This injury also satisfies the redressability prong of standing. If the court orders USCIS to conduct WLDs for Plaintiffs, those Plaintiffs who receive favorable WLDs will receive deferred action. Although some Plaintiffs may not receive favorable WLDs, "there is a sufficient relationship between the judicial relief requested"—WLDs—"and the injury suffered"—denial of deferred action. *Diamond Alt. Energy*, 606 U.S. at 112 (internal quotation marks and citation omitted).

Having found that Plaintiffs have standing on this basis, the court need not assess Plaintiffs' other standing arguments and instead turns to the merits.

## II. Merits

### A. Whether 8 C.F.R. Requires USCIS to Issue WLDs

To succeed on a claim of unlawful withholding, a plaintiff must assert "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis omitted). USCIS does not deny that it has failed to issue WLDs to Plaintiffs, and 5 U.S.C. § 706(1) states that a "reviewing court *shall* . . . compel agency action unlawfully withheld," (emphasis added), so the sole issue on the merits is the question of whether USCIS is required to undertake waiting list review in Plaintiffs' cases. The focus of this inquiry is the meaning of 8 C.F.R. § 214.14(d)(2), which reads in relevant part:

> All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. . . . USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list.

Plaintiffs and USCIS have opposing views of USCIS's obligations under 8 C.F.R. § 214.14(d)(2). Plaintiffs argue that § 214.14(d)(2) requires USCIS to make waiting list decisions for all U visa applicants. In turn, they contend that the BFD policy is an unlawful legislative rule insofar as it supplanted the WLD process without going through notice and comment rulemaking. USCIS responds that, "[i]n its 2021 policy update"—the BFD policy—"USCIS interpreted § 214.14(d)(2) as not requiring that every petition receive waiting list review, but rather as requiring placement on the waiting list only if the petitioner has received a full eligibility determination and the statutory cap has not been met." (Doc. 87 at 19.)

The court begins with the regulatory text, which clearly requires that *some* subset of people be placed on the waiting list, specifically "eligible petitioners" who cannot receive U visas because of the annual cap. In interpreting a word or phrase in a statute or regulation, the court must first determine whether Congress has defined that word or phrase within the meaning

of the statute. Here, USCIS argues that 8 U.S.C. § 1101(a)(15)(U) defines the phrase "eligible petitioners" and that, per the language in that statute, a noncitizen is only eligible for a U visa once "the Secretary of Homeland Security determines that" the applicant meets the required criteria. Thus, in their view, USCIS is only required to place someone on the waiting list once it has conducted the WLD review. By contrast, whether to commence that review in the first place is, in USCIS's view, entirely within its discretion.

Section 1101(a)(15) begins with this language: "The term 'immigrant' means every [noncitizen] except a[] [noncitizen] who is within one of the following classes of nonimmigrant [noncitizens] . . . ." Section 1101(a)(15)(U)(i) continues:

> (i) subject to section 1184(p) of this title [the 10,000 per year U visa cap], a[] [noncitizen] who files a petition for status under this subparagraph, if the Secretary of Homeland Security determines that--
>
>> (I) the [noncitizen] has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity in clause (iii);
>>
>> (II) the [noncitizen] (or in the case of a[] [noncitizen] child under the age of 16, the parent, guardian, or next friend of the [noncitizen]) possesses information concerning criminal activity in clause (iii);
>>
>> (III) the [noncitizen] (or in the case of a[] [noncitizen] child under the age of 16, the parent, guardian, or next friend of the [noncitizen]) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the [Department of Homeland Security], or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and
>>
>> (IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States[.]

USCIS is, to an extent, correct that § 1101(a)(15)(U)(i) defines an "eligible petitioner." But it blurs the fine points. Subclauses (I)–(IV) list the eligibility criteria for a U visa and

together describe an "eligible petitioner"—someone who meets those criteria and has submitted an application that will ultimately prove that they meet those criteria. Where USCIS goes wrong is in arguing that a petitioner is not eligible until "the Secretary of Homeland Security determines that" the petitioner meets those criteria. That language serves a different function. As the language at the beginning of § 1101(a)(15) makes clear, each of the provisions that follows defines one particular delineation between the terms "immigrant" and "nonimmigrant." Because a noncitizen residing in the United States is not a nonimmigrant until they actually *have* the requested nonimmigrant visa, § 1101(a)(15)(U)(i), as a whole, describes someone who has U visa status. Receiving a nonimmigrant visa, of course, requires the Secretary of Homeland Security—through USCIS officers—to *determine* that the applicant meets the eligibility criteria. The language "if the Secretary of Homeland Security determines that" serves to distinguish between people who are merely eligible for U visas and those people who *have* U visas. It is not, in itself, an eligibility criterion that an applicant must satisfy to be "eligible."

That reading of § 1101(a)(15)(U) comports with the ordinary and natural meaning of the word "eligible," whose definition is "qualified to participate or be chosen." *Eligible*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/eligible [https://perma.cc/6XBE-GK6N] (last visited Aug. 21, 2026). One does not have to have already *been* chosen to be eligible, nor *deemed* eligible. One simply needs to *be* eligible, which in the case of a U visa occurs when a noncitizen files a U visa application that meets the statutory criteria.

Section 214.14(d)(2) states that USCIS "must" place eligible petitioners on the waiting list. Taken together, the language in § 214.14(d)(2) means that USCIS must place on the waiting list those noncitizens who have submitted U visa applications that meet the statutory criteria. Of course, the court recognizes that USCIS cannot *know* which petitioners are eligible until it

conducts a full adjudication. But certain petitioners are nevertheless eligible for U visas on the basis of their filings. Because eligible petitioners are entitled to placement on the waiting list, it follows that USCIS must undertake an adjudication to determine *which* petitioners are eligible and therefore entitled to waiting list placement, and it must undertake that adjudication within a reasonable time.

The court is mindful that an agency's own interpretation of its regulation is controlling unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted). For several reasons, USCIS's interpretation of the regulation is not entitled to deference in this case. First, insofar as USCIS's interpretation relies on its construction of 8 U.S.C. § 1101(a)(15)(U), the court owes no deference to the agency in its interpretation of a statute. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Additionally, although USCIS argues that it adopted this interpretation of § 214.14(d)(2) in 2021, it appears that it actually adopted it as a litigation position. *See Regents*, 591 U.S. at 22, 24 (stating that "[a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible *post hoc* rationalizations"). As Plaintiffs note, USCIS opened its BFD Proposal with this language: "USCIS has never implemented a U nonimmigrant Bona Fide Determination (U BFD) process as permitted by statute. Rather, USCIS policy has been to conduct a full waitlist determination review *as currently mandated by regulation*." (CAR at 3 (emphasis added; footnotes omitted).) The second sentence cites to 8 C.F.R. § 214.14(d)(2), the regulation at issue in this case, which has not been repealed or revised since USCIS stated that the regulation mandates full waitlist determinations.

USCIS dismisses the statement in the BFD Proposal as "imprecise wording characterizing the waiting list regulation used in an internal planning document." (Doc. 91 at 5.) The word "mandated" is not the type of ambiguous word that one would be apt to use "imprecisely." But even accepting the premise that USCIS's use of the word was a drafting error, nothing in the subsequent policy announcement or USCIS Policy Manual provides a clear interpretation of § 214.14(d)(2). The language that USCIS cites to as its "interpretation" of its regulation in the USCIS Policy Manual is as follows: "USCIS initiates waiting list adjudication for petitioners who do not receive BFD [work authorization]." (CAR at 29.) That language is a statement of USCIS policy and practice, not its interpretation of a regulation. That the statement was one of policy is supported by the fact that USCIS has previously made policy statements that it will not review applications for interim benefits even though such review is plainly mandatory.

Consider, for example, USCIS's 2002 regulation regarding BFD review for applicants for T nonimmigrant status, a form of status for victims of trafficking:

> Once an application is submitted to the Service, the Service will conduct an initial review to determine if the application is a *bona fide* application for T nonimmigrant status. An application shall be determined to be *bona fide* if, after initial review, it is properly filed, there appears to be no instance of fraud in the application, the application is complete . . . , the application presents *prima facie* evidence of each element to show eligibility for T-1 nonimmigrant status, and the Service has completed the necessary fingerprinting and criminal background checks.

67 Fed. Reg. 4800. Despite the mandatory language in that provision ("the Service *will* conduct an initial review"), in 2009, the Acting Deputy Director of USCIS stated that, because there was no "backlog" of T visa applications, "focusing on issuing interim [employment authorization documents] is not necessary." Memorandum from Michael Aytes, Acting Deputy Dir., USCIS, to Richard Flowers, Acting USCIS Ombusdman, *Response to Recommendation 39: "Improving the Process for Victims of Trafficking and Certain Criminal Activity: The T and U Visas"*

(May 22, 2009). At the time, the agency believed, as a matter of policy, that it was "more efficient to adjudicate the entire [T visa application]" than to undertake a separate BFD review process. *Id.*

The statement in the U visa BFD Policy—that "USCIS initiates waiting list adjudication for petitioners who do not receive BFD [work authorization]"—is similarly best understood as a statement of policy that USCIS intended to ignore the mandatory language of 8 C.F.R. § 214.14(d)(2). Nowhere does USCIS explicitly state that it is interpreting that regulation or offer an explanation of how it came to that interpretation.

Even accepting that USCIS interpreted its policy as it now claims, that interpretation is not entitled to deference because it is plainly erroneous. If USCIS's mandatory duty to place an applicant on the waiting list were triggered only by USCIS's completion of waiting list review, USCIS could entirely avoid the obligations set forth at § 214.14(d)(2) through its own inaction, rendering the regulation—and its mandatory language—a nullity. The Second Circuit has previously rejected an agency's interpretation of its own regulations when that interpretation would in effect do away with the regulation altogether. *See Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) ("We cannot accept the Director's interpretation of the statute and regulation, which would render them nullities."). That USCIS created an additional, more streamlined process to issue interim benefits does not change the plain meaning of the waiting list regulation.

This court has previously observed that "8 C.F.R. § 214.14(d)(2) requires USCIS to place U visa applicants on the waiting list when they would be eligible for a visa but for the annual cap," yet USCIS has, "as a matter of policy, essentially chosen to ignore the existence of § 214.14(d)(2)." *Chaudhari v. Edlow*, No. 25-cv-659, 2026 WL 1970731, at *10 (D. Vt. May 13, 2026). After the thorough analysis conducted above, the court reaffirms that position

and joins the many other courts that have found that 8 C.F.R. § 214.14(d)(2) mandates that USCIS conduct waiting list review for U visa applicants. *See Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 453–54 (6th Cir. 2022); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374–76 (4th Cir. 2021); *Reyes Olmos v. USCIS*, 785 F. Supp. 3d 459, 472 (D. Neb. 2025); *Lopez v. Jaddou*, No. 24-CV-2128, 2025 WL 3251626, at *7 (S.D. Tex. Nov. 21, 2025); *Prajapati v. Dir. of USCIS*, No. 25-cv-258, 2026 WL 36451, at *6 (W.D. Mo. Jan. 6, 2026); *Noorani v. Dir. of USCIS*, No. 25CV221, 2025 WL 3282296, at *3 (D. Neb. 25, 2025); *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1199 (D.N.M. 2025); *Esparaza v. Mullin*, No. 25-CV-555, 2026 WL 872352, at *6 (D. Colo. Mar. 30, 2026); *Patel v. USCIS*, No. 25-CV-114, 2026 WL 146496, at *6 (E.D. Mo. Jan. 20, 2026); *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 259 (E.D.N.Y. 2021); *Gonzalez v. DHS*, 500 F. Supp. 3d 1115, 1128 (E.D. Cal. 2020); *Lara Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1347 (N.D. Ga. 2021); *Uranga v. USCIS*, 490 F. Supp. 3d 86, 101 (D.D.C. 2020); *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 595 (W.D. Tex. 2019); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019).

### B. Whether the BFD Policy Unlawfully Amended or Rescinded 8 C.F.R. § 214.14(d)(2)

The court must consider one final issue before reaching a conclusion on the motions for summary judgment. An assumption underlying the foregoing analysis is that the BFD policy, as a sub-regulatory act that never went through notice and comment rulemaking, cannot amend or repeal 8 C.F.R. § 214.14(d)(2). Whether the notice-and-comment requirement applies depends on whether the rule at issue is a "substantive rule" or an "'interpretive rule, general statement[] of policy, or rule[] of agency organization procedure, or practice.'" *Saget v. Trump*, 375 F. Supp. 3d 280, 362 (E.D.N.Y. 2019) (quoting 5 U.S.C. § 553(b)(A); citing *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993)). A substantive rule "grants rights, imposes obligations, or produces

other significant effects on private interests." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993) (quoting *Perales v. Sullivan*, 948 F.2d 1348, 1354 (2d Cir. 1991)). Under the APA, rulemaking includes "formulating, amending, or repealing a rule." 5 U.S.C. § 551(5); *see also Kisor v. Wilkie*, 588 U.S. 558, 608 (2019) (Gorsuch, J., concurring in the judgment) ("Once an agency issues a substantive rule through notice and comment, it can amend that rule only be following the same notice-and-comment procedures." (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 100–01 (2015))).

USCIS argues that the BFD policy is an interpretive rule. While that may be generally true, the issue here is the recission or amendment of 8 C.F.R. § 214.14(d)(2)—a substantive rule that created new rights for U visa applicants. USCIS could therefore only amend or rescind it through notice and comment rulemaking, just as it was promulgated through notice and comment rulemaking. To the extent that the BFD policy purports to replace, amend, or rescind § 214.14(d)(2), it has no power to do so.

The court recognizes that USCIS's decision to replace WLDs with BFDs "may make perfect sense" "[f]rom a resource-allocation and human welfare perspective." *Chaudhari*, 2026 WL 1970731, at *10. But, "[a]lthough it is within the power of [an] agency to amend or repeal its own regulations, [an] agency is not free to ignore or violate its regulations while they remain in effect." *Elevance Health, Inc. v. Becerra*, 761 F. Supp. 3d 1, 13 (D.D.C. 2024) (alterations in original; quoting *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519, 526 n.20 (D.C. Cir. 1978)). And "[f]idelity to regulations is required 'even if [they] were not statutorily or constitutionally mandated . . . .'" *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 437 (E.D.N.Y. 2011) (quoting *Bergamo v. Commodity Futures Trading Comm'n*, 192 F.3d 78, 79–80 (2d Cir. 1999)). Here, § 214.14(d)(2) obligates USCIS to conduct WLDs,

and recent changes to USCIS's deferred action policy have created a meaningful difference in the benefits conferred by BFDs and WLDs.

USCIS has unlawfully withheld WLDs from Plaintiffs. In turn, the APA directs that a "reviewing court shall . . . compel agency action unlawfully withheld." 5 U.S.C. § 706(1). Plaintiffs' motion for summary judgment (Doc. 88) is therefore GRANTED, and USCIS's motion for summary judgment (Doc. 87) is DENIED.

**Conclusion**

Defendant's Motion of September 18, 2026 (Doc. 106) is DENIED insofar as it seeks to strike Plaintiffs' "Submission of Evidence" of the same date (Doc. 105) and is GRANTED insofar as it seeks leave to file a response to the "Submission of Evidence."

Plaintiffs' motion for summary judgment (Doc. 88) is GRANTED, and USCIS's motion for summary judgment (Doc. 87) is DENIED. Given the number of plaintiffs in this case, the court will not require USCIS to complete waiting list decisions for all plaintiffs within 14 days, as Plaintiffs request. Instead, the court ORDERS that USCIS complete waiting list decisions within 60 days, or, in cases where a request for evidence ("RFE") is required, that it issue an RFE within 60 days and render a final waiting list decision within 30 days of receiving a response to the RFE.

Dated at Burlington, in the District of Vermont, this 21st day of September, 2026.

Geoffrey W. Crawford, Judge
United States District Court